UNITED STATES of America, Plaintiff-Appellee,

v.

Raymond CONTRERAS, William Ray Soto, Reynaldo Garcia, Jr., and Kenneth James Cassie, Defendants-Appellants.

Nos. 83–1052, 83–1055, 83–1089 and 83–1105.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1984.

Decided March 15, 1985.

Canby, Circuit Judge, concurred in part and dissented in part and filed opinion.

David Rodriguez, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

James D. Skow, Sacramento, Cal., Gilbert A. Roque, Woodland, Cal., Gerald Singer, Timothy P. Murphy, Sacramento, Cal., for defendants-appellants.

Before KENNEDY and CANBY, Circuit Judges, and RYAN,* District Judge.

KENNEDY, Circuit Judge:

Each of the appellants was convicted following a stipulated facts trial in federal district court for violations of RICO provisions (Racketeer Influenced and Corrupt Organizations), 18 U.S.C. § 1961–1968 (1982). Before the federal investigation leading to the convictions, the appellants had given extensive information to state officers under a state grant of immunity. The

---

* Honorable Harold L. Ryan, United States District Judge for the District of Idaho, sitting by designation.

statements and testimony subject to the state immunity involved the same incidents that were the basis for the subsequent federal RICO prosecution. Before the federal trial, the district court held a four day hearing to determine whether the Government's evidence was derived from sources independent of the state immunized testimony, and whether the appellants had waived their fifth amendment rights before talking with federal agents and testifying before the federal grand jury. The court held that the Government had satisfied its burden of proving that its evidence was based on independent sources, and that defendants had waived their self-incrimination rights. We find no error and affirm.

We recite the background of the state investigation and the federal prosecution. The appellants were serving prison sentences at Deuel Vocational Institute in California, and were members of a California prison and crime gang known as La Nuestra Familia. State authorities were conducting an investigation of the Nuestra Familia and approached prisoners reportedly dissatisfied with the gang. Prisoners who dropped out of the gang routinely sought protective custody and were housed in a separate unit at Deuel.

Each appellant here had left the gang and spoken initially to state authorities under a promise that immunity would be sought. The state authorities purposely failed to advise the suspects of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), on the rationale that as a consequence the statements could not be used against the defendants if the state court refused to grant a formal immunity. Formal immunity was granted by the state court, however, and we treat the case as if that immunity was the inducement for the appellants to talk in detail with the state officers.

State investigators, as a matter of routine, were advising federal agents of the identity of the Nuestra Familia members and of the dropouts. In addition, the state investigators asked the appellants in this case whether they would be willing to cooperate with other governmental authorities, and positive responses were passed on to the federal authorities. Federal agents did not interview the appellants until after each one had talked with state authorities under a promise to seek immunity.

■ When a defendant faces federal criminal prosecution for matters related to testimony he has given under a state grant of immunity, the Government must show that the immunized testimony has not been used, directly or indirectly, in the federal prosecution. *Murphy v. Waterfront Commission*, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678 (1964). The Government's burden is more than simply a negation of taint; rather, the Government has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972); *United States v. Weiner*, 578 F.2d 757, 774 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *Block v. Consino*, 535 F.2d 1165, 1169 (9th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). We have held that the burden of proof may be met by a preponderance of the evidence. *United States v. Rogers*, 722 F:2d 557, 560 (9th Cir.1983).

At the pretrial hearing in federal court, the Government established three sources of evidence: (1) identification of the appellants by state authorities prior to any state immunity; (2) statements by victims and witnesses of the crimes; and (3) statements made by the appellants, first to federal agents and then to the federal grand jury. We discuss each source to determine if it resulted from immunized testimony.

■ Appellants' first contention is that their identification to federal authorities was itself a use of the immunized testimony, since it had the effect of focusing the federal investigation on them. This argument is refuted by the district court's factual determinations. The district court found that federal agents learned these

four suspects were gang members before appellants agreed to testify in return for state immunity. The court further concluded that the federal agents' decision to interview these appellants did not stem from the declarations given by appellants to the state officers. This conclusion is supported by the evidence. Each appellant had dropped out of the gang and had approached state authorities before giving immunized testimony. The names of cooperative witnesses were routinely passed on to federal agents. The appellants now before us are only four out of seventeen defendants indicted by the federal grand jury. Thus, the federal investigation was not focused only on those who gave state immunized testimony.

Witnesses and victims of the alleged crimes were the second source of federal evidence established by the Government. The federal agents were led to these individuals by appellants' disclosures in the federal interviews and by the original crime reports. Thus, this evidence was plainly derived from an independent, legitimate source.

Regarding the statements made by appellants to federal authorities, the Government's final source of evidence, we consider whether the defendants made a knowing and intelligent waiver of their fifth amendment privilege against self-incrimination before submitting to interrogation by federal agents or before testifying to the grand jury. Each defendant was advised of his *Miranda* rights before talking with federal agents, and each later testified before the grand jury, after again being advised of his *Miranda* rights. The district court found that the defendants' waivers were knowing and intelligent. *Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966).

The appellants in essence challenge the district court's finding that the waiver was knowing and intelligent by arguing that the usual *Miranda* warnings were insufficient here. The appellants argue that the warnings given by the federal agents were inadequate as a matter of law. They contend that when a suspect is questioned by federal officers after having been given state immunity, the *Miranda* warning should be expanded to include advice that state immunized testimony cannot be used in a federal prosecution. They argue further that even if such a specific warning is not required in every interrogation of state immunized suspects, it was required in the context of this case. We reject both contentions.

The *Miranda* warning, now so central for law enforcement in every jurisdiction, would be unworkable if lower courts were to begin drafting required supplements to it for various types of cases. We decline to require a mandatory supplement in the case of immunized suspects, even on the dubious assumption that it is our prerogative to elaborate on the standard warning now required. *See United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (Supreme Court, not Court of Appeals, has the authority to draw fundamental exceptions for the exclusionary rule).

In *United States v. Hooten*, 662 F.2d 628, 631 n. 1 (9th Cir.1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982), we indicated that where federal immunity previously granted is being withdrawn by the same officials who conferred it, we may require specific advice to the suspect that immunity is no longer a consideration. We are not presented with such a case here. An immunity once granted was not being withdrawn. The question at this point in the case concerns appellants' alleged misunderstanding of the extent of such immunity. *Hooton* is not applicable to this situation.

Appellants argue that the federal officers gave misleading statements with reference to the extent of the state immunity so that, at least in the context of this case, interrogation should not have begun until the suspects were given explicit advice that their previous state testimony could not be used in any manner.

In its findings, the trial court summarized the substance of the federal warnings as indicating to the suspects "that the state immunity could not have any effect upon a federal prosecution." Based on this statement, appellants argue that the suspects might have inferred from this that their previous testimony could be used in a federal prosecution.

■ We conclude that the ordinary sense of the agents' remarks is that the suspects were being warned that a federal prosecution might still be commenced. Not only was the standard *Miranda* warning given to this effect, but there was extensive discussion between the suspects and the federal agents respecting the cooperation the suspects could expect from the prosecution on sentence reduction after any prosecution. We find no objective flaw and no necessarily misleading inferences in the advice given by the federal agents.

We find it unnecessary to decide whether there would be grounds for reversal if the suspects cooperated because of a subjective misapprehension on their part respecting the permitted uses of the state testimony. *Cf. United States v. Kurzer,* 534 F.2d 511, 517 (2d Cir.1976) (subjective reliance on immunity may bear on whether prosecution has an independent source). On this record, no subjective misapprehension with respect to the use of prior state testimony has been established. The appellant Cassie testified in the case, and the testimony did not necessarily support the conclusion that there was a subjective misapprehension respecting the use of previous state testimony. The *Miranda* warnings given by the agents and their explicit warnings that federal prosecution could be commenced were all that the circumstances of this case required. The trial court's conclusion that in the face of those warnings the appellants made a knowing and intelligent waiver is supported by the record.

■ Having concluded that the defendants were properly advised of their *Miranda* rights and made a knowing and intelligent waiver before giving statements to federal authorities, we note that, by waiving their fifth amendment rights, the defendants themselves became an independent, legitimate source of evidence for the federal authorities. The Government could therefore use the defendants' statements in the federal investigation and prosecution. *Cf. Pillsbury Co. v. Conboy,* 459 U.S. 248, 263, 103 S.Ct. 608, 617, 74 L.Ed.2d 430 (1983) (civil deponent's testimony closely tracking his prior immunized testimony is not, without duly authorized assurance of immunity at the time, itself immunized testimony).

■ There remain two additional, more specific claims that the Government used immunized testimony. First, the federal agent who had interviewed defendant Contreras was present in the courtroom during the first few minutes of Contreras' testimony in the state trial. The agent testified that he wanted to speak with Contreras before the testimony to provide "mainly just a little moral support." This incident occurred long after the federal indictment, and there is no indication that the agent learned anything that was not already known to federal authorities. Accordingly, although the agent's actions were improper, the conduct was harmless. *United States v. Rogers,* 722 F.2d at 560–61.

■ The second contention is that United States Special Attorney Simpson read the transcripts of the immunized testimony. The district court found that Simpson read the transcripts in preparation for the pretrial hearing on the immunity issue. Simpson explained at the hearing that she had not discussed the testimony with any of the federal agents assigned to the case or with Assistant United States Attorney David Rodriquez, and that she would have withdrawn from the case had it gone to trial. Given this detailed explanation of Simpson's insulation, we will not impute her knowledge of the testimony to other members of the Government investigation team. *See United States v. Bianco,* 534 F.2d 501, 508–10 (2d Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976).

We are unable to conclude that the Government used immunized testimony in prosecuting appellants. The judgment of the district court is therefore AFFIRMED.

CANBY, Circuit Judge, concurring in part and dissenting in part:

I concur in all of Judge Kennedy's opinion except that portion holding that the defendants made a knowing and intelligent waiver of their fifth amendment privilege against self-incrimination before submitting to interrogation by federal agents and testifying before the federal grand jury. As Judge Kennedy has pointed out, all of the defendants had previously made extensive statements under a state grant of immunity. Federal agents, according to their testimony, not only gave the standard *Miranda* warnings, but also advised the defendants, variously, as follows: that "any grants of immunity promised to them by any state court ... was [sic] not binding on the Federal Court and, therefore, did not apply on the Federal Court, and, therefore, did not apply in the Federal investigation" (TR 19–20); that the state-court-granted immunity would or did "not apply in Federal Court" (TR 133); or that "no deals whatsoever in state court would be—would apply or be binding in Federal Court" (TR 148). In the circumstances of this case, I believe that these statements were fatally misleading. They failed to make clear that federal authorities were precluded from making use of the statements that the defendants had already given under a promise or grant of immunity by state authorities. *See Murphy v. Waterfront Commission*, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964). Indeed, the advice suggests that "all deals are off" and that anything the state promised was of no effect. The logical implication is that the federal authorities might use the statements already made. Had the defendants been warned that no use whatever could be made of those statements by federal authorities, they might well have elected to remain silent.

In *Miranda*, the Supreme Court reaffirmed the proposition that the privilege against self-incrimination "has always been 'as broad as the mischief against which it seeks to guard.'" 384 U.S. at 459–60, 86 S.Ct. at 1619–20 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892)). Any waiver of the privilege must be "made voluntarily, knowingly and intelligently." *Id.* at 444, 86 S.Ct. at 1612. In this case the defendants' waiver of the right to remain silent was not knowing and intelligent because the advice of the agents would have reasonably led the defendants to believe that, for purposes of the federal prosecution, their silence had already been broken. For that reason, I conclude that the district court erred in failing to suppress their statements.