**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Hermon D. ROGERS,**
**Defendant–Appellee.**

No. 89–4872.

United States Court of Appeals,
Fifth Circuit.

July 23, 1990.

Robert H. Norman, Asst. U.S. Atty., Robert O. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellant.

Joseph P. Langston, Ronald Michael, Langston & Langston, Booneville, Miss., for defendant-appellee.

Before GARZA, HIGGINBOTHAM, AND DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

The United States appeals an order of the district court granting Rogers' motion to suppress his confession. The district court found that Rogers made the statements while in custody and that the government failed to prove that the statement was made pursuant to a voluntary waiver of Rogers' rights after he received proper warnings in accordance with *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

When reviewing a ruling from a pretrial suppression hearing, "[t]his Court must give credence to the credibility choices and findings of fact of the district court unless clearly erroneous." *United States v. Raymer*, 876 F.2d 383, 386 (5th Cir.) (citing *United States v. Watson*, 591 F.2d 1058, 1061 (5th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979)), *cert. denied*, —— U.S. ——, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). A finding is clearly erroneous only when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The ultimate issue of voluntariness, however, is a legal question requiring the reviewing court to make an independent determination. *Raymer*, 876 F.2d at 386 (citations omitted).

The trial court found:

Philip Thrasher had confessed to a state stolen guns charge and, as a result, the Lee County Sheriff's Department learned that the guns might be in the possession of Hermon D. Rogers. On or about October 17 or 18, 1987, Deputy Sheriff James Partlow and investigating trainee John ("Buddy") Bell visited with Rogers. Bell thought of Rogers as a victim of a thief [sic] and was not investigating a criminal offense. Partlow and Bell did not go to Rogers' home to arrest him, and the conversation that took place in the front yard was not preceded by *Miranda* warnings. Bell and Partlow were only interested in obtaining the guns. In effect, Rogers asked the two men whether he would be charged if he cooperated. Although the precise answer is disputed, there is no conflict in the testimony that he was told "no."

The next day, Rogers drove to Alabama where the relatives to whom he had sold the guns lived. He was so concerned with meeting a deadline to return the guns that he called the sheriff's office to let Bell know he would be late.

On or about October 20 BATF Agent Steve Lewis was at the Lee County Sheriff's Department. He does not recall if his presence was requested or if he happened to be there, but he was asked to help trace the firearms. That same day, Rogers received a telephone call advising him that "somebody wants to talk to you." He went to the sheriff's office.

Lewis spoke to Bell and Chief Deputy Nicky Hall, to whom Bell reported, for background information in advance of interviewing Rogers. He independently knew that Rogers was a convicted felon.

Lewis began by reading Rogers the *Miranda* rights and obtaining a signed waiver. Rogers, who assumed that this was a follow-up to the county investigation, was not given the reason for these steps. The statement he gave was the source of a three-count indictment related to the firearms.

This Court's independent review of the suppression hearing evidence fully confirms the trial court's findings of fact. We now turn to the proper legal conclusion to be drawn from these facts.

█ The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the "totality of the circumstances," the statement is the product of the accused's "free and rational" choice. *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir.1980) (quoting *Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77, 79 (1968)). A statement is not "compelled" within the meaning of the Fifth Amendment if an individual "voluntarily, knowing-

ly and intelligently" waives his constitutional privilege. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The inquiry whether a waiver is coerced "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986):

> First, the relinquishment of the right must have been voluntary in the sense that it was a product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

We are mindful that a valid waiver of constitutional rights does not occur in a vacuum but rather in response to a particular set of facts. *United States v. McCrary*, 643 F.2d 323, 329 (5th Cir. Unit B 1981). Thus the inquiry as to voluntariness of a confession is necessarily a case-by-case endeavor. *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir.1980) (en banc), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

■ Given the peculiar facts of this case, we find that Rogers' confession was not voluntary for the purposes of the Fifth Amendment. Representatives of the Lee County Sheriff's Office assured Rogers that he would not be arrested if he cooperated with them by retrieving the guns stolen by Thrasher. The following day, acting in reliance on this promise, Rogers retrieved and delivered the guns to the Sheriff's Office. The next day Rogers received a telephone call from someone at the Sheriff's Office who requested that he return to the office for further questioning concerning his purchase of the guns. The inter-

view by two federal officers occurred in a secretary's office at the Sheriff's Department. The interviewers, knowing that Rogers was a convicted felon, did not apprise him of the purpose or consequences of their inquiry. The trial judge found, based upon his observation of Rogers during his testimony, that Rogers' intellectual capacity was such that it was reasonable for him to conclude that this questioning was related to the original investigation and promise by the Sheriff's Office.

The government points to *United States v. Long*, 852 F.2d 975 (7th Cir.1988) and *United States v. Contreras*, 755 F.2d 733 (9th Cir.), *cert. denied*, 474 U.S. 832, 106 S.Ct. 100, 88 L.Ed.2d 81 (1985), as factually similar cases in which the existence of state-immunized statements were not found to bar subsequent federal prosecution. However, we find both cases factually distinguishable. In *Long* the defendant was arrested by state authorities and informed that charges against him would be filed in two counties. Long then proposed that he cooperate with law enforcement officials in Tazewell County in exchange for a promise that his sentence in that county would not exceed and would run concurrently with the sentence he received in Fulton County. With the agreement consummated, Long proceeded to describe his role in several burglaries, during one of which he had stolen a gun. Subsequently, Long was prosecuted in federal court for violating federal firearms laws; an important part of the government's case was Long's disclosure regarding the gun pursuant to his cooperation agreement with the Tazewell County officials.

The Seventh Circuit rejected Long's argument that the confession given to state authorities should be suppressed in federal court because of his failure to foresee his federal criminal liability. The court characterized Long as a "person experienced in the criminal justice system who [attempted] to strike the best possible bargain while his leverage remained high." 852 F.2d at 977. The court emphasized that the Tazewell County officials "did nothing to hide any federal criminal prosecution he might

face, or mislead him, and made it clear that the agreement was limited to the consequences he might face in Tazewell County proceedings." 852 F.2d at 976. Furthermore, the federal government "in no way participated in or was aware of the Tazewell County activities and did nothing to deceive him or to elicit his statement regarding the gun." *Id.*

In *United States v. Contreras*, 755 F.2d 733 (9th Cir.), *cert. denied*, 474 U.S. 832, 106 S.Ct. 100, 88 L.Ed.2d 81 (1985), the defendants had given extensive information to state law enforcement agencies under a state grant of immunity when they were subsequently prosecuted in federal court based on the same underlying facts. Each defendant was advised of his *Miranda* rights before talking with federal agents. The trial court found that the federal warnings should have put the defendants on notice "that the state immunity could not have any effect upon a federal prosecution": beyond the standard *Miranda* warning there was extensive discussion between the suspects and the federal agents respecting the cooperation the suspects could expect from the prosecution on sentence reduction after any prosecution. 755 F.2d at 737. The court found that the "ordinary sense of the agents' remarks is that the suspects were being warned that a federal prosecution might still be commenced." *Id.*

Here, Rogers was summoned to the sheriff's office by an employee of that department and informed that someone wanted to speak with him regarding the guns stolen by Thrasher. Rogers was then interviewed in a secretary's office by two federal officers. Though the *Miranda* warning was given, Rogers indeed "misunderstood the consequences of speaking freely to the law enforcement officials." *Colorado v. Spring*, 479 U.S. 564, 575, 107 S.Ct. 851, 858, 93 L.Ed.2d 954 (1987). Because the interview was conducted under the auspices of the Lee County Sheriff's Department, whose representatives had assured Rogers that he would not be prosecuted for his purchase of the stolen guns, Rogers' statement was not "voluntary" for purposes of the Fifth Amendment. Rogers did not know that he was a suspect, and the federal agents in no way revealed to him that he rather than Thrasher was the target of their investigation. Under the totality of the circumstances, Rogers' waiver of his Fifth Amendment rights was not made with a full awareness of the consequences of the decision to abandon his rights or with the requisite level of comprehension. *See Moran v. Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141; *Fare v. Michael C.*, 442 U.S. at 735, 99 S.Ct. at 2572.

For the foregoing reasons, the ruling of the district court is

AFFIRMED.