Ricky James Flowers was convicted of sexual penetration of C.L., a child under fourteen years of age, in violation of Mississippi Code Annotated § 97-3-95(c) (1972), as amended. He was sentenced to twenty (20) years in the custody of the Mississippi Department of Corrections with ten (10) years suspended. A motion for new trial or in the alternative for JNOV was filed and denied. Flowers appealed to this Court, assigning the following as error:
1. The trial court committed reversible error in admitting purported confessions of the defendant;
2. The trial court committed reversible error in admitting the testimony of David Walker, former attorney of the defendant; and
3. The verdict is against the overwhelming weight of the evidence, therefore the trial court should have granted a new trial.
This factual summary is from the testimony of C.L. at the trial. On June 12, 1988, C.L. was to be driven to the store for her older sister, D., by D.'s boyfriend, Ricky Flowers, to buy cold drinks and candy for D. Although C.L.'s cousin wanted to go along, Flowers told her she could not. Flowers then drove C.L. to a cotton field, turned off the car engine and turned on some music. Flowers moved over to C.L.'s side of the car seat and raised her shirt in order to fondle her breasts, kissed her about her neck and shoulders leaving a passion mark, unzipped her shorts, moved her panties aside, and inserted his finger into her vagina. C.L. then attempted to run away from Flowers, but he told her he would take her back home. Flowers did take her home, but not before stopping at Jiffy's for D. and giving C.L. $5.00 in exchange for her not telling anybody what had happened between them. C.L. was thirteen years old at the time of the incident.
The day after the incident a relative of C.L. called the Sheriff's office and reported the occurrence. Sheriff David Bryan and Deputy Joe Cosby (who had died by the date of the trial) went to C.L.'s home to discuss the incident with her. She was carried back to the police station for further questioning and gave a statement which was taken down by Sheriff Bryan. The statement she gave on this day is different from the testimony summarized above, which C.L. gave at trial. In the statement given the day after the incident C.L. said that once she and Flowers stopped in the cotton field, Flowers asked if he could touch her breast, to which she responded negatively. Flowers then pulled off her clothes, which C.L. retrieved before jumping out of the car to run away from him. Flowers then caught C.L. and put her back in the car.
Sheriff Bryan admitted that C.L. was upset on the day he took her statement. Sheriff Bryan talked to C.L. several times that day in an effort to get the entire story. Sheriff Bryan does not remember whether C.L. was accompanied to the police station by relatives or whether he asked her if what he wrote was her entire statement. C.L. testified that she went to the police station without any of her relatives. She also said the statement taken by Sheriff Bryan was not read back to her; Sheriff Bryan wrote while C.L. talked. C.L. further stated that she did not say Flowers took off all her clothes, despite what the Sheriff wrote. Only C.L. and Sheriff Bryan were present when this incident was discussed.
Following the questioning of C.L., Ricky Flowers was picked up in Louisville and brought to the Panola County Jail. With full knowledge of the charge against him (rape at the time) and the penalty it carried (possible death), Flowers made a statement. (The charge was later changed to sexual battery.)
Sheriff Bryan was led to the scene of the battery by C.L. on June 13, 1988, the day after the incident occurred. There he found evidence of fresh tire marks and footprints. No attempt was made to match the tire prints to Flowers' car nor to match *Page 830 
the footprints to Flowers or C.L. because Flowers admitted to being at the scene.
On July 28, 1988, Flowers was taken to the Highway Patrol Station where Lt. Charles Smith, District Executive Officer of the Highway Patrol, administered a polygraph test. According to Smith's testimony, Flowers was first advised of his Miranda
rights and asked to sign a waiver. It was standard procedure to conduct a pre-test before the actual test was made. During the pre-test, when the examiner and test taker informally converse, Ricky stated that he took C.L. to a cotton field, kissed her, fondled her breasts, put his finger in her vagina, and gave her $5.00 to say nothing about it. He stated he did not have sexual intercourse with the child. At this time Flowers was still charged with rape.
David Walker, who was initially the attorney representing Flowers in this matter, arranged the polygraph test at Flowers' request. Walker accompanied Flowers to the Highway Patrol Station for the examination. Walker too recalled that Flowers said he had not had intercourse with C.L., but that he had "loved on her breasts," put his finger into her vagina, and given her five dollars ($5.00) not to tell anyone. However, Walker recalled the conversation taking place after the polygraph test had been given. Walker also remembered Deputy Cosby and some sort of "student deputy" being present for this conversation.
 I.
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING PURPORTED CONFESSIONS OF THE DEFENDANT?
In determining whether a confession was freely and voluntarily given, the circuit court sits as a fact finder. McCarty v.State, 554 So.2d 909, 911 (Miss. 1989). This Court will not reverse a lower court on a finding of fact unless it was manifestly wrong. Smith v. Estate of Harrison, 498 So.2d 1231, 1233 (Miss. 1986).
Flowers argues that his confessions, admitted through Sheriff Bryan and through Charles Smith, should not have been allowed into evidence because they were not given voluntarily without threat or fear. The statement made by Flowers to Sheriff Bryan, although ruled admissible at the pre-trial suppression hearing, was not offered into evidence at trial. Furthermore, no witness testified as to the contents of this statement. Therefore, this statement was not before the jury in any form and had no influence on its decision to convict. However, the statement made to Charles Smith, the polygraph examiner, was admitted first through Smith's testimony and later through the testimony of David Walker, Flowers' former attorney.
There is little disputed about the content of the "confession" given by Flowers in the presence of Charles Smith and David Walker. Both testified to the same content (that Flowers denied sexual intercourse but admitted kissing C.L., fondling her breasts, putting his finger in her vagina, and giving her five dollars ($5.00) not to tell anyone), although Smith claimed that this conversation transpired prior to the actual polygraph test in the presence of only himself and Flowers while Walker recalled that the conversation took place afterward and in the presence of himself and two others. Either way, no promises of leniency were made to Flowers. The only "threat" claimed by Flowers was that Smith made a statement to Flowers that he needed to "tell the truth" or "come clean." There was no evidence that Flowers was under any mental or emotional disability, was on drugs or alcohol, and there was evidence of his ability to read and write. Whether the statement was made as part of the polygraph pre-test or following the polygraph exam, Flowers had been read hisMiranda rights and signed a waiver and release before the statement was made.
It appears that Flowers was adequately warned and under the totality of the circumstances made a knowing and voluntary waiver of his rights. McCarty, 554 So.2d at 911; Davis v. State,551 So.2d 165, 169 (Miss. 1989), certiorari denied 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990), rehearing denied495 U.S. 953, 110 S.Ct. 2221, 109 L.Ed.2d 546 (1990). The *Page 831 
statement was not made under the influence of promises or threats but was a product of Flowers' free and rational will. Chisolm v.State, 529 So.2d 630, 634 (Miss. 1988); U.S. v. Rogers,906 F.2d 189, 190 (5th Cir. 1990). The State carried its burden of proof and the trial court properly found that the statement was freely and voluntarily given. McCarty, 554 So.2d at 911;Davis, 551 So.2d at 169. As there is no manifest error in this determination, we affirm on this issue.
 II.
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING INTO EVIDENCE THE TESTIMONY OF DAVID WALKER, FORMER ATTORNEY OF THE DEFENDANT?
"The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State,567 So.2d 237, 238 (Miss. 1990), citing Hentz v. State,542 So.2d 914, 917 (Miss. 1989), Monk v. State, 532 So.2d 592, 599 (Miss. 1988). Unless the trial judge's discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824, 826 (Miss. 1983), citing Page v. State, 295 So.2d 279 (Miss. 1974). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, at 238.
Flowers contends that his statement offered via Walker's testimony, summarized above under the first issue, was a violation of attorney/client privilege under the Mississippi Rules of Evidence, Rule 502(b). This rule reads as follows:
 A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.
M.R.E. 502(b). Confidential communications are those
 not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
M.R.E. 502(a)(5).
Walker testified that Flowers made the statement at issue to Smith after the polygraph test had been administered, in the presence of Deputy Cosby and a "student deputy" named Allen Mills, in addition to Walker himself and Smith. At the suppression hearing Smith testified that Flowers made the statement at issue to him, Smith, before the polygraph test when no one else was present. During Smith's trial testimony he was not questioned about the absence or presence of others when the statement was made.
First, Flowers' statement to Smith does not fall within the parameters of M.R.E. 502(b). Smith was not Flowers' lawyer or his lawyer's representative, a lawyer or representative of a lawyer representing the State in the matter, nor was he Flowers' representative. Therefore, the statement made to Smith is not controlled by M.R.E. 502(b).
Additionally, if we proceed on the assumption that Walker's version is true, the statement is not "confidential" as defined in M.R.E. 502(a)(5) and used in M.R.E. 502(b). "The test for confidentiality is intent. . . . Intent can be inferred from the particular circumstances." M.R.E. 502(a)(5), Comment. According to Walker's testimony, there were two people present at the time the statement was made, in addition to himself and Smith. *Page 832 
Even if Smith fit into one of the categories of persons listed in M.R.E. 502(b), which he does not, no intent that the statement be a confidential attorney/client communication can be inferred from these circumstances. Working on the belief that Smith's version is true, the statement may be considered confidential pursuant to M.R.E. 502(a)(5), but it is still not controlled by M.R.E. 502(b) as a statement which Flowers could protect by asserting attorney/client privilege.
If, however, Smith's version is true, how was Walker privy to the same statement? We can only assume that the statement was communicated from Flowers to Walker during the course of their attorney/client relationship. In this instance, the statement would be subject to the assertion of attorney/client privilege by Flowers pursuant to M.R.E. 502(b). Furthermore, the statement would be a confidential communication as defined by M.R.E. 502(a)(5) and used in M.R.E. 502(b). In this case, Flowers' objection on the grounds of attorney/client privilege should have been sustained and Walker's testimony should not have been allowed.
Although Walker's testimony should not have been allowed under the last scenario, the statement at issue could still have been introduced via Smith's testimony. In order to admit the statement, it is not necessary to determine which situation in fact occurred, as Smith could have testified in any event. The question here is not the admissibility of the statement per se, but the admissibility of the testimony of Walker, Flowers' former attorney in this cause.
A lawyer's job at trial is to act as an advocate for his client. If the lawyer becomes a witness at the trial, it is easy to see how the jury could be confused by this dual role. Should his testimony be taken as proof or just a comment on the proof? Although Walker was not still representing Flowers at the time of trial, he had previously represented him in this same matter. It follows that the jury may have given his testimony more weight than that of the average lay witness. The fact that Walker no longer represented Flowers and testified against him may even have been taken to mean that once Walker learned what Flowers had done he wanted to help convict him rather than represent him. We can only speculate as to what Walker's testimony meant to the jury.
However, under the totality of the circumstances, Walker's testimony merely corroborated Smith's testimony regarding Flowers' statement; we find its admission was unnecessary and cumulative, yet harmless error. Nonetheless, in order to provide future guidance to the bench and bar, we feel compelled to address the reasons this decision is not without reservation.
It should be noted that several Rules of Professional Conduct appear to have been violated by Walker as a result of his testimony. Rule 1.6(a) provides that a "lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . . ." Lawyer/client confidentiality is a fundamental principle in the lawyer/client relationship. It is this principle which allows the full and frank communication necessary for proper legal representation.See Rule 1.6, Comment. The confidentiality of Rule 1.6 is broader in scope than that provided for by M.R.E. 502. Rule 1.6 applies to all information relating to legal representation rather than just to confidential communications. Rule 1.6, Comment. Such information may be revealed by the lawyer only in certain exceptions, i.e., to prevent a criminal act, to establish a claim or defense for the lawyer or to respond to allegations brought against the lawyer, or if required by law or court order. Rule 1.6(b)(1) and (2) and (c). Most importantly for this particular situation, "[t]he duty of confidentiality continues after the client-lawyer relationship has terminated." Rule 1.6, Comment.
This confidentiality is too important a principle for this Court to allow it to be ignored. "The public is better protected if full and open communication by the client is encouraged than if it is inhibited." Rule 1.6, Comment. Although Walker was subpoenaed as a witness in this trial, he did not attempt to assert the attorney/client *Page 833 
privilege on behalf of Flowers nor did he assert Rule 1.6 to keep confidential any information obtained in conjunction with his representation of Flowers. If lawyers are not required to comply with the Rules of Professional Conduct, why not do away with them entirely? It is only by enforcing these Rules that the law and the legal profession will be improved. Neglect in the observance of these Rules "compromises the independence of the profession and the public interest which it serves." Rules of Professional Conduct, Preamble.
Walker may also have run into trouble with Rule 1.8(b)(1) (a lawyer shall not use information relating to representation of a client to the disadvantage of the client) and Rule 1.9(b) (a lawyer who formerly represented a client in a matter shall not subsequently use information relating to the representation to the disadvantage of the former client except as permitted by Rule 1.6 or when the information has become generally known). "It is professional misconduct for a lawyer to . . . violate the rules of professional conduct. . . ." Rule 8.4.
It was foolish of the prosecution to call Walker as a witness and foolish of Walker to testify so readily when the integrity of the legal profession would be compromised thereby and such testimony would add nothing to the state's case. The trial judge erred in admitting Walker's testimony. By the offer and admission of this cumulative and questionable testimony, the state nearly succeeded in turning a simple, clean conviction into a reversal and retrial. Gilding can never improve the lily.
 III.
IS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND SHOULD THE TRIAL COURT HAVE GRANTED A NEW TRIAL?
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Thornhill v. State,561 So.2d 1025, 1030 (Miss. 1989), rehearing denied563 So.2d 609 (Miss. 1990). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Benson v. State, 551 So.2d 188, 193 (Miss. 1989), citing McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987).
Flowers was charged with committing sexual battery in violation of Miss. Code Ann. § 97-3-95 (1972), as amended. The applicable portion of this section provides that a person is guilty of sexual battery if he engages in sexual penetration with a child under fourteen years of age. Miss. Code Ann. § 97-3-95(c) (Supp. 1991). Sexual penetration is defined as "any penetration of the genital or anal openings of another person's body by any part of a person's body. . . ." Miss. Code Ann. § 97-3-97(a) (Supp. 1991).
The State presented evidence that C.L. was under fourteen years of age at the time of the battery as well as evidence that Flowers sexually penetrated her, as defined by § 97-3-97, by inserting his finger into her vagina. C.L. testified as to both her age and the sexual penetration; Flowers' statement, testified to by Smith and Walker, offered corroborating evidence of sexual penetration. Accepting all of this as true, there is sufficient evidence to support the jury's verdict of guilty. No unconscionable injustice will result if the verdict remains undisturbed.
The standard of review of a post-trial motion is abuse of discretion. Robinson v. State, 566 So.2d 1240, 1242 (Miss. 1990). A motion for a new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Gibson v. State, 580 So.2d 739, 741 (Miss. 1991); Lane v. State, 562 So.2d 1235, 1236-37 (Miss. 1990), citing May v. State, 460 So.2d 778 (Miss. 1985). It is within the trial court's discretion *Page 834 
to grant a new trial if it is required in the interest of justice where the jury's verdict is contrary to the weight of the evidence. Veal v. State, 585 So.2d 693, 695 (Miss. 1991);Crenshaw v. State, 520 So.2d 131, 135 (Miss. 1988).
The jury's verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand will sanction an unconscionable injustice. No new trial is required in the interest of justice nor is the jury's verdict contrary to the weight of the evidence. There being no abuse of discretion, we affirm on this issue.
CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS, WITH THE LAST TEN (10) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.