IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2008

Charles R. Fulbruge III
Clerk

No. 06-31123

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CARLOS RAFAEL MARTINEZ, also known as Manuel Vega, also known as
Francisco Gomez-Ramirez

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CR-33-1

Before GARWOOD, CLEMENT and ELROD, Circuit Judges.

PER CURIAM:[*]

Carlos Rafael Martinez ("Martinez") appeals the denial of his motions to
suppress evidence and his confession.  We affirm.

I. FACTS AND PROCEEDINGS

On February 3, 2005, Martinez was indicted for possession with intent to
distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1)
and 18 U.S.C. § 2.  He was also charged with one count of illegal reentry after

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). Martinez filed a motion to suppress evidence and a motion to suppress his confession. The district court held a suppression hearing and denied the motions to suppress. Martinez pleaded guilty to both counts in the indictment on April 24, 2006, reserving his right to appeal the denial of his motions to suppress. He was sentenced to 130 months of imprisonment for both counts to be served concurrently.

At the suppression hearing, Louisiana State Police ("LSP") Sergeant Victor Schilleci, an eight-year LSP veteran, testified that he conducted a traffic stop of a silver Cadillac driven by Martinez at 11:24 p.m. on January 29, 2005. He stopped the car along Interstate 10 ("I-10") in St. John Parish, Louisiana. The Cadillac was traveling at approximately 70 miles per hour and was following too closely behind a truck, almost striking it. When speaking to Martinez, Schilleci noticed that Martinez had an accent, but, not speaking Spanish, the sergeant questioned Martinez in English. Schilleci testified that Martinez was able to respond in English to his questions.

While questioning Martinez, the sergeant noticed that Martinez appeared nervous because his hands were shaking and he had a worried look on his face, beyond the normal appearance of one stopped for a traffic violation. In English, Martinez told Schilleci that he was traveling with his wife from Houston to Pennsylvania and that the car was a rental. Schilleci examined the rental agreement and noticed that it had been rented seven days ago by a different person. Martinez told Schilleci that he had only had the vehicle for a couple of days, not seven. When asked who had rented the vehicle, Martinez could not give the name of the individual who signed the rental agreement. These inconsistencies aroused Schilleci's suspicions. Throughout the conversation, Schilleci observed that Martinez did not calm down. The sergeant noticed that the rental agreement showed that the car was due back in Houston on February 5, 2005, but Martinez told him that he was not returning to Houston.

The sergeant testified that he was also suspicious of Martinez because his years of experience with LSP taught him that Houston was a source city for narcotics, stolen property, weapons, and illegal aliens. Martinez's route through New Orleans on I-10 was unusual for travel to the east coast, because Interstate 12 ("I-12") provided a more direct route, bypassing the city, and cutting two hours off of the travel time. Schilleci was aware of law enforcement intelligence indicating that drug couriers were avoiding the I-12 bypass because of heavy interdiction efforts along that route. Finally, the sergeant was suspicious of the time of travel, 11:24 p.m., because, based upon his own experience and training, the majority of seizures of contraband occurred at night.

Based upon the suspicious actions of the driver, Schilleci decided to speak to the female passenger in the car. She told the sergeant that she and Martinez had been married for four years and were returning from Houston where they had visited sick relatives. Martinez had previously told him that they had been visiting friends. The sergeant noticed that the passenger was nervous because she was breathing heavily.

While speaking to the passenger, Schilleci observed two tires mounted on wheels in the back seat of the car. When he asked the passenger about them, she became more nervous and said that she did not know. Schilleci returned to Martinez to ask a few more questions. In contrast to what the passenger had said, Martinez told Schilleci that he and the passenger were married for two years. He also denied that he had been arrested before. The sergeant then ran computer checks which indicated Martinez had been arrested several times on drug distribution charges and for money laundering. In the past, he had also been charged with federal crimes that were not currently pending.

Schilleci asked Martinez if he could read and understand Spanish, to which Martinez responded that he could. The sergeant then obtained Martinez's consent to search the Cadillac using an LSP consent-to-search form in Spanish.

Schilleci testified that Martinez read and signed the form. The form indicates it was signed at 11:35 p.m. on January 29, 2005, eleven minutes after the stop was initiated. During the subsequent search, LSP officers found approximately six kilograms of cocaine hidden inside the car. The traffic stop and search were not videotaped because Schilleci did not have camera equipment in his car.

Martinez's testimony about the traffic stop diverged significantly from that of Schilleci's. He denied that the sergeant asked him about his travel plans and stated that Schilleci did not tell Martinez why he had been stopped. He testified that he and Schilleci talked about "nothing." Martinez also indicated that Schilleci never asked him about the car rental agreement. He stated that he did not understand what the sergeant was saying when he returned to Martinez after speaking to the passenger. He also said that Schilleci never gave him a Spanish consent-to-search form. Martinez testified that the signatures on the traffic ticket and Spanish consent-to-search form were not his. He indicated that he had not seen the consent-to-search form before. He admitted that he could read and write Spanish.

At the suppression hearing, the defense offered, and the court admitted into evidence, an LSP advice-of-Miranda-rights form in Spanish. It had the signature "Carlos Martinez" and was also signed by Sergeant Derrick Stewart. The form was marked that it was signed at 1:06 a.m. on January 30, 2005 at 2101 N. I-10 Service Road, the address of LSP's Troop B headquarters in Kenner, Louisiana.

Special Agent William Cambre, a six-year veteran of the Drug Enforcement Administration ("DEA"), also testified at the suppression hearing. Cambre testified that he and Task Force Agent Reinaldo Suarez arrived at Troop B headquarters in the early-morning hours of January 30, 2005. Cambre spoke with Schilleci about the circumstances of the traffic stop, then began interviewing Martinez at approximately 3:15 a.m. Unable to speak Spanish,

Cambre advised Martinez of his Miranda rights in English. Cambre instructed Suarez to advise Martinez of those rights in Spanish. Cambre testified that Martinez agreed to speak with the agents and that the "in-depth conversation" was in English. Cambre did not have any problem understanding Martinez and believed that Martinez had no problem understanding him. The agent stated that he told Martinez that if he cooperated, he would notify the U.S. Attorney's Office which would later bring his cooperation to the attention of the judge. Martinez then told Cambre of his involvement in narcotics trafficking, including the statement that the current load of drugs was bound for Pennsylvania.

Sergeant Shaheen Moayed-Pardazi, a twelve-year law enforcement veteran, previously assigned to the Northeast Texas Narcotics Task Force, testified about a traffic stop he conducted on February 18, 2004. Martinez was the driver of the vehicle stopped by Pardazi. A videotape was played of the stop which included audio recordings of Pardazi's conversation in English with Martinez. Also recorded was Pardazi's conversation in English and Spanish with Martinez's female passenger, the same woman traveling with him on January 29, 2005.

Martinez testified that, while he was at the St. John Parish Prison, before he was transported to Troop B's headquarters, he was approached by a Spanish-speaking individual, dressed as a mechanic. The mechanic told him in Spanish that he should tell law enforcement about the drugs they had found in his car. The mechanic did not advise him of his rights. During this conversation, a law enforcement officer who did not speak Spanish was also in the room. The officer had previously attempted to speak to Martinez in English, but Martinez told him he spoke no English. Martinez denied signing the Spanish Miranda rights form dated January 30, 2005 at 1:06 a.m. He stated that neither Cambre nor Suarez advised him of his Miranda rights. Martinez testified that he did not speak English with Cambre, but that Suarez told him, in Spanish, that he would be

released if he cooperated with the agents. He denied that he understood Sergeant Pardazi's conversation with him on the videotape. Martinez admitted that his resident alien card and Social Security card were fraudulent documents that he had purchased in the 1990s. He admitted that his real name was Francisco Gomez Ramirez but that he "always" used the name Carlos Martinez when he was in the United States. He testified that he was not read his Miranda rights subsequent to his drug arrest in New York in 1999, nor his 2004 arrest in Texas, nor his 2004 arrest in Philadelphia. He admitted that he was read his Miranda rights prior to his 2001 deportation. He admitted to signing his Social Security card and drivers license, but denied signing the financial affidavit in the court's record for the present case, in addition to the other documents related to his prosecution.

The district court denied Martinez's motions to suppress the cocaine found in the Cadillac and his confession to Cambre and Suarez. On appeal, Martinez claims that the cocaine should have been suppressed because his inability to speak English accounted for the inconsistencies that served as the basis for his continued detention. He also argues that his confession was induced by a false promise to release him if he cooperated.

## STANDARD OF REVIEW

"When considering a ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error." United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000). We view the evidence considered at the suppression hearing and all inferences drawn therefrom in the light most favorable to the prevailing party. United States v. Munoz, 957 F.2d 171, 173 (5th Cir. 1992).

DISCUSSION

I.    Reasonable suspicion

A.    Applicable law

"A routine traffic stop is a limited seizure that closely resembles an investigative detention" and is analyzed within the framework established by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Estrada, 459 F.3d 627, 630 (5th Cir. 2006). "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." Id. at 631. Reasonable suspicion is present "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant" continued detention. Id. To determine whether reasonable suspicion has been developed, courts must examine the totality of the circumstances, including the collective knowledge and experience levels of the officers involved. Id. at 631–32. "Courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. at 632 (internal quotations omitted). In making our assessment of an officer's actions, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. at 21–22 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). We review the district court's determination of reasonable suspicion de novo. Estrada, 459 F.3d at 630.

B.    Analysis

Martinez's sole argument is that Schilleci's continued detention of him before running a computer check was unjustified because his reasonable

suspicion was based on inconsistencies in Martinez's statements that were the result of his inability to speak English.

As an initial matter, Martinez attempts to reverse a finding of the district court by re-characterizing it. He relies on the district court's characterization, after reviewing the videotape of the 2004 traffic stop in Texas, that "Martinez appeared to be able to communicate in a limited way in English with the officer in that case, although his understanding of English appeared to be very poor." United States v. Martinez, No. 2:05-CR-33-1, slip op. at 8 (E.D. La. Apr. 4, 2006). Martinez selectively quotes the district court in his brief. The district court's actual finding in regard to the 2005 traffic stop in Louisiana at issue on appeal was that "based upon the credible testimony of Schilleci and DEA Agent Cambre, the videotape of Mr. Martinez's 2004 traffic stop in Texas, and Mr. Martinez's record of other traffic stops, the Court finds that Martinez had a sufficient understanding of what was happening during the traffic stop in this case." Id. Correctly quoted, the factual finding of the district court, which Martinez admits is "critical to this appeal," does not undermine Schilleci's determination that there were inconsistencies in Martinez's statements. The district court found, despite the characterization of his English-comprehension as "very poor," that "Martinez had a sufficient understanding."

In his reply brief, Martinez argues that the finding about "what was happening during the traffic stop" does not apply to Martinez's understanding of Schilleci's questions during the traffic stop. We disagree. First, "what was happening during the traffic stop" was primarily Schilleci's questioning. Second, substantial portions of the suppression hearing were devoted to the question of Martinez's ability to understand English and Schilleci's determination that there were inconsistencies in Martinez's statements. Therefore, there is no basis to suggest that the district court meant to exclude Schilleci's questioning from its finding regarding Martinez's understanding during the traffic stop.

Because Martinez fails to understand what the district court's factual finding was, he consequently fails to argue that the district court clearly erred. Even assuming that Martinez had argued that the district court had clearly erred in its factual determination, our review of the record establishes that there was substantial basis for the district court's finding. First, Martinez's testimony was not credible at all, especially considering how he appeared to have understood Sergeant Pardazi in the videotape which this Court has reviewed. His credibility is further damaged by his longtime use of fraudulent documents and his claims that he did not sign several forms, even though the district court found those signatures matched signatures that he admitted he had made. We have reviewed the same documents and agree with that finding. Finally, not only is Schilleci's testimony credible, but his testimony is further bolstered by Cambre's credible testimony.

Martinez's reliance on United States v. Guerrero, 374 F.3d 584 (8th Cir. 2004), is misplaced. In Guerrero, the Eighth Circuit was faced with a decision in which the district court had made a factual determination that the officer and defendant were "unable to effectively communicate and that [the officer] was aware of the communication barrier." Id. at 589. The district court in this case made the opposite finding.

This Court holds that the district court did not err in its finding regarding Martinez's ability to understand what was happening during the traffic stop, which included Schilleci's questioning. Thus, Schilleci was objectively reasonable in determining that Martinez made inconsistent statements. As Martinez's argument regarding the detention rests entirely on setting aside the inconsistencies which Schilleci observed, Martinez's argument fails.

Martinez suggests that Schilleci "had an interest in avoiding the delay that waiting for a Spanish-speaking officer would entail." Whether a detention allegedly caused by the language barrier between a suspect and an officer is

unreasonable when the detention would last even longer if the officer waited for an interpreter to arrive is not an issue we need to determine here.

II.    Confession

A.    Applicable law

This Court has held that:

> [a] confession is voluntary if the Government proves by a preponderance of the evidence that the defendant voluntarily waived any rights against self-incrimination. The statement must be voluntarily, knowingly and intelligently made, and the individual confessing must be cognizant of the rights being abandoned and the potential consequences of doing so. We assess the voluntariness of a confession under the totality of the circumstances. . . . [A] question regarding whether a confession was voluntary is a legal one that is reviewed de novo.

United States v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005) (citations omitted).

B.    Analysis

Martinez's argument is based on his claim that his confession was induced by a false promise to release him if he cooperated. He argues that the district court made no finding regarding his assertion that Suarez promised to release him if he cooperated. However, the district court found Cambre's testimony regarding the interview of Martinez to be credible. It also found that Martinez's assertion that he had not signed his Spanish Miranda rights form was not truthful. The court determined that Martinez understood English despite his testimony to the contrary. Finally, the district court found that Cambre's and Suarez's statements to Martinez "that his cooperation could result in lesser charges or in exoneration of [his passenger] [were] not tantamount to coercion." Martinez, slip op. at 17. Such a determination shows that the district court did not find that the agents had offered to release Martinez. Based upon our review of the record, the district court did not clearly err in making that finding.

Even if Suarez had made the promise to Martinez that he would be released if he cooperated, Martinez's argument still fails. This Court has

10

indicated that "certain promises, if not kept, are so attractive that they render a resulting confession involuntary." Streetman v. Lynaugh, 812 F.2d 950, 957 (5th Cir. 1987). In United States v. Rogers, this Court held invalid the waiver of constitutional rights by a defendant who complied with law enforcement in reliance on a promise that he would not be arrested if he cooperated. 906 F.2d 189, 191–92 (5th Cir. 1990). In that case, the defendant fulfilled his end of the bargain to law enforcement, but the officials did not fulfill theirs. Id.

Martinez testified that Suarez told him that they would release him on the condition that he would tell Suarez who the buyer of the drugs was and conduct a controlled delivery for the agents.[1] In his reply brief, he characterizes Suarez's promise as a "lie." However, Martinez fails to show that Suarez lied to him, or that his promise was a false one. Cambre testified that after his confession Martinez "refused to cooperate and finish the investigation with us." Martinez does not dispute that. He never testified that he fully complied with Suarez's demands, nor does he argue that he did so on appeal. He never complied with what he claims were the agents' demands and the agents never broke what Martinez claims were their promises to him. He fails to prove that the promise he alleges Suarez made was a lie. If such a bargain had been struck, it was first violated by Martinez, which indicates that it had little influence on him or that it was never made in the first place.

Martinez also argues that his confession is invalid because of his claim that he was approached by a Spanish-speaking mechanic and told to cooperate without receiving Miranda warnings. Assuming for the purposes of argument that Martinez testified truthfully about this, his confession was still valid. Martinez argues that the circumstances of his confession lie somewhere between

---

[1] Martinez's testimony that Suarez told him that the agents would "follow behind me" to the buyer is not at all credible considering the distance between Louisiana and Pennsylvania, the drugs' destination according to Cambre's testimony about Martinez's confession.

the circumstances of Missouri v. Seibert, 542 U.S. 600 (2004) and Oregon v. Elstad, 470 U.S. 298 (1985). He concedes that his case does not involve the same deliberate technique that was used in Seibert where officers first interrogated a suspect without giving Miranda warnings, then used the confession from that first interrogation to elicit a second confession after warnings were issued. 542 U.S. at 604. However, Martinez argues that the mechanic's approach was somehow more coercive than the first confession in Elstad, because he was approached at the St. John Parish Prison as opposed to his home, as was the case in Elstad. 470 U.S. at 300–01. He also argues that it was more coercive because the mechanic was the first Spanish-speaker with whom he spoke after his arrest by English-speaking law enforcement officers.

We disagree. First, unlike the defendant in Elstad, Martinez did not make an incriminating statement in response to the mechanic's questions. Martinez's argument that the mechanic's conversation with him was more coercive than the police questioning in Elstad is proven wrong by the fact that he did not make a statement to the mechanic.

Second, despite the fact that there was no coerced statement resulting from Martinez's encounter with the mechanic, we will review the circumstances of Martinez's confession under the factors described by the Supreme Court in Elstad for second confessions affected by prior coerced statements. 470 U.S. at 310. Those factors from Elstad were "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators." Id. Approximately three hours passed between the mechanic's conversation and Martinez's confession. Martinez was moved from the St. John Parish Prison to an LSP troop headquarters in Jefferson Parish. The original "interrogator" changed from a Spanish-speaking mechanic to two federal agents. Also, after the time of Martinez's interaction with the mechanic, Martinez was given a Spanish Miranda rights form at Troop B headquarters which he signed

12

at 1:06 a.m. on January 30, 2005. Shortly after 3:00 a.m., Cambre advised him of his rights in English and Suarez advised him of his rights in Spanish. We agree with the district court that any prior coercion was dispelled by the time Martinez confessed at Troop B.

Finally, we note that Martinez has substantial experience in the criminal justice system, including several arrests and a deportation proceeding. His claims that he was not read his rights on these prior occasions are no more credible than his testimony that he did not sign several forms which bear his signature. Thus, Martinez's experience in the criminal justice system lends further weight to the determination that his confession was voluntarily, knowingly, and intelligently made.

## CONCLUSION

The district court's denial of Martinez's motion to suppress evidence and his motion to suppress his confession is AFFIRMED.