# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00854-SCT

*ALPHONSO HAYDEN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2006 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL R. FARROW |
| | PHILLIP BROADHEAD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    Alphonso Hayden was indicted by the Lowndes County Grand Jury for unlawful possession of a stolen vehicle. At trial, the State called Hayden's former attorney to testify that two documents produced to the State in discovery (a certificate of title and a bill of sale) were provided by Hayden to his attorney. This testimony allowed the State to argue that, because Hayden had actual possession of the documents (which had different vehicle identification numbers), he knew, or should have known, the vehicle had been stolen.

¶2.    Hayden was convicted and sentenced as a habitual offender to serve ten years imprisonment, without parole. The questions presented are: (1) whether the attorney-client

privilege was breached when the former attorney testified he received the two documents from his client; and (2) whether – by removing the former attorney from the case so he could testify – the trial judge violated Hayden's right to counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution.

## BACKGROUND FACTS AND PROCEEDINGS

¶3. On May 28, 2003, a 2003 white GMC Yukon Denali, bearing vehicle identification number ("VIN") 1GKEK63U73J140390 was stolen from the parking lot of Royal Automotive Company in Atlanta, Georgia.[1] Five days later, a man identifying himself as Curtis Powell entered the Madison County Tax Collector's office in Ridgeland, Mississippi, and submitted a title application for a white 2003 Yukon Denali, with VIN 1GKEK63U73J140390. The application represented that the Yukon had no lienholders, and that Powell had purchased it from Herrin-Gear Chevrolet in Jackson, Mississippi.[2] Deputy Tax Collector Lisa Duvall issued Powell a Madison County vehicle tag bearing the number 838 MBE for the white Yukon.

¶4. In early June 2003, Jerome Miller, a 31-year resident of Columbus, but more recently a resident of Shuqualak in Noxubee County, had a chance meeting with Hayden, whom Miller had known for many years. Miller's wife was about to retire from the local school

---

[1] At the time of the crime, the white Yukon was assigned to Royal's employee, YvetteWorthington, as a demonstrator.

[2] Herrin-Gear employee Vincent Hughes would later testify at Hayden's trial that "we don't sell GMC Denalis."

system and Miller was interested in purchasing her a vehicle as a retirement gift. Miller noticed Hayden's white Yukon, and engaged him in a discussion about the vehicle.

¶5.     On Saturday, June 21, 2003, city policeman Andrew Cotton, who was on routine patrol on North 18th Street near Sims Scott Park in Columbus, noticed a white GMC Denali "weaving" and being driven in "a careless manner." By checking tag number 838 MBE, Officer Cotton learned that the vehicle was registered to Curtis Powell of Ridgeland. Officer Cotton issued the driver, Hayden, a Uniform Traffic Ticket for careless driving.

¶6.     On July 7, 2003, two men entered the Lowndes County Tax Collector's office together, and one of the men presented Deputy Tax Collector Pamela Lang a document purporting to be a copy of a title application for a white 2003 GMC Denali. The application, which listed no lienholder, represented that Marvin Harris[3] had purchased the vehicle from Herrin-Gear Chevrolet in Jackson. Although at that time, Lang did not know the identities of the two men, she would later identify Hayden as the man who presented her with the title application.[4] Lang issued Hayden a Lowndes County tag bearing number 677 LNX, for the white 2003 GMC Denali.

¶7.     Later, Miller had another chance meeting with Hayden at a muffler shop on Highway 82 in Columbus. Hayden was a passenger in a red GMC Denali being driven by a man who was unknown to Miller. Recalling that Miller was interested in purchasing a vehicle for his

_____

[3]Harris's address was listed on the title application as 186 Lehmberg Rd., Apt. 1A, Columbus, MS 39702. Mississippi Highway Patrol Investigator Randy Ginn would later testify at Hayden's trial that he diligently searched for Harris, but to no avail.

[4]Lang testified the reason she remembered Hayden and this particular transaction was because "anytime somebody buys a 40, $50,000 vehicle with no lienholder, I mean, you just - - you're just suspicious, I guess," especially when the person is young.

wife, Hayden mentioned that he had purchased the white Denali (which Miller had seen before) from the man with him. Hayden stated that this man would be willing to sell Miller the red Denali. Miller checked out the red Denali by running a CARFAX, which revealed no negative information, and that the red Denali had been purchased in Baltimore, Maryland. Based on this information, and because Hayden in essence "vouched" for the unknown man who was supposedly from Prentiss, Mississippi, Miller and the man reached an agreement on the terms of purchase for the red Denali.

¶8.     Miller borrowed some "up-front money" from a local bank so that he could take immediate possession of the vehicle. The seller "signed his title over to Miller" so that Miller could get a vehicle tag.[5] According to the agreement, Miller was to pay the balance of the purchase price when he obtained a title in his name and a tag for the vehicle.

¶9.     On July 15, 2003, Miller's wife went to the Noxubee County Tax Collector's office to purchase the vehicle tag. However, because the VIN on the title did not match the VIN on the red Denali, Mrs. Miller was unable to obtain the tag. When Miller came home that day from fishing, Trooper Randy Ginn of the Mississippi Highway Patrol was waiting to discuss this case with him. Miller learned from Trooper Ginn that the red Denali he had purchased from the unknown man had been stolen.

¶10.     Trooper Ginn was trained in automobile theft detection and identification, including the method for inspecting a VIN plate to determine if it was fake. According to Trooper Ginn, two areas of inspection for fake VIN plates are the rivets used to attach the VIN plate

---

[5]The owner on the certificate of title was listed as Robert Watson, and the signature on the back of the certificate of title indicated that the seller was Robert Watson.

4

to the dashboard and the font and style of the numbers and letters on the VIN plate. When Trooper Ginn arrived at the Millers's residence on July 15, he looked at the VIN plate on the red Denali and immediately determined that the VIN plate was fake. When he interviewed the Millers that day, he also reviewed the certificate of title which listed Robert Watson[6] as the owner of the red Denali. Trooper Ginn learned from Miller that Hayden had been present during the transaction concerning the red Denali.

¶11. The following month, upon learning that Hayden could be found at East Mississippi Community College, Golden Triangle Campus, in Mayhew, Trooper Ginn made plans with other law enforcement officials to travel to the EMCC campus to talk with Hayden about the ongoing investigation concerning the Millers red Denali. Trooper Ginn learned from Miller that Hayden was driving a white 2003 GMC Denali; therefore, when Ginn arrived at the EMCC campus on August 18, 2003, he first looked for the white Denali.

¶12. Once the vehicle was located in the parking lot, Ginn looked at the VIN plate and concluded from his training that the VIN plate on Hayden's vehicle was fake. As Trooper Ginn would later testify at trial, "[t]he rivets that attached [the VIN plate] to the – the dashboard were not of – consistent with General Motors rivets, and the font and distinguishing characteristics of the letters and numbers in the VIN were not characteristic with General Motors VINs." The displayed VIN was 1GKEK63UX3J238295, the same VIN on the title application Hayden presented to deputy tax collector Pamela Lang to purchase a Lowndes County vehicle tag for the white 2003 GMC Denali.

---

[6]Trooper Ginn later attempted to locate Watson, to no avail.

5

¶13.   Ginn went to  the proper school administrator to receive permission to have Hayden

removed from class.  Instead of talking about the Millers red Denali, Trooper Ginn was by

then interested in questioning Hayden about his white Denali.  In due course, Ginn was able

to determine that the white GMC Denali in Hayden's possession had been stolen from the

Royal car dealership in Atlanta.[7]  Upon learning that "Marvin Harris" had been listed as the

owner on the title application which Hayden presented to Pamela Lang at the Lowndes

County Tax Collector's office to purchase a Lowndes County tag for the white Denali, Ginn

attempted to locate Harris, to no avail.

¶14.   In due course, the Lowndes County Grand Jury indicted Hayden for the crime of

possession of stolen property.  The indictment alleged, *inter alia*, that Hayden

> on or about the 18[th] day of August, 2003, in the County aforesaid, did
> unlawfully, willfully, and feloniously, possess one 2003 GMC Yukon Denali,
> bearing vehicle identification number 1GKEK63U73J140390; said property
> having a total value in excess of $500.00, and having been feloniously stolen
> away from the said Royal Oldsmobile Co., Inc., and further that the said
> ALPHONSO HAYDEN knew or should have known that said property had
> been so stolen, in violation of MCA § 97-17-70; contrary to the form of the
> statutes in such cases made and provided, and against the peace and dignity of
> the State of Mississippi.

¶15.   The trial court allowed two amendments to the indictment.  The first allowed the

above language[8] to be stricken, and the second allowed Hayden to be charged as a habitual

offender under Mississippi Code Annotated Section 99-19-81 (Rev. 2007).  The habitual-

---

[7]Yvette Worthington, the Royal employee who was driving this vehicle as a demonstrator at the time it was stolen, would later testify at Hayden's trial that the original VIN for this vehicle was 1GKEK63U73J140390.

[8]The trial court found the stricken language to be surplusage, and not an element of the offense which the State was required to prove pursuant to the statute.

offender amendment alleged that Hayden had two prior felony convictions in which he received sentences of one year or more in a state or federal penitentiary.

¶16.    At trial, Hayden was represented by attorney Gary Street Goodwin of Columbus.[9] On the first morning of trial, during a break in the voir dire, Hayden gave Goodwin two documents to be produced to the State. One of the documents purported to be a bill of sale, and the other purported to be a certificate of title. Both documents related to a white 2003 GMC Yukon Denali vehicle.

¶17.    Consistent with the rules of discovery as codified in URCCC 9.04, Goodwin promptly tendered the documents to the State. Out of the presence of the jury, the trial judge discussed the documents with counsel. During the discussion, the trial judge noticed that the VIN on the bill of sale (1GKEK63U73J140390), did not correspond with the VIN on the certificate of title (1GKEK63UX3J238295).

¶18.    Because a necessary element of proof regarding possession of stolen property concerned whether the defendant knew or should have known that the vehicle was stolen, the State wished to offer the newly-discovered documents into evidence to prove that, because of the discrepancy in the VIN's on these two documents, Hayden knew or should have known that the vehicle was stolen. However, the prosecutor opined that, since Hayden could not be compelled to be a witness against himself, the only witness available to testify concerning the bill of sale and certificate of title was Hayden's lawyer, Goodwin.

---

[9]Although Mr. Goodwin was one of several public defenders for Lowndes County, he was retained as counsel in this case by Hayden.

¶19.    The judge called a recess to allow Goodwin to confer with Hayden. When court reconvened, the State served a subpoena on Goodwin. The judge found that Goodwin had a conflict of interest with his client because he "very well may be a witness in this case." Based on this finding, the judge discharged Goodwin and informed Hayden he should retain another attorney. The judge ordered a mistrial and reset the case for trial at the next term of court. By September 28, 2005, Hayden had not retained new counsel, so the trial court appointed Michael Farrow as Hayden's counsel.

¶20.    Trial thereafter commenced on March 1, 2006. During the trial, the State called Goodwin to testify. However, before Goodwin testified, the judge conferred with the attorneys outside the hearing of the jury, to lay out the ground rules concerning Goodwin's testimony. In essence, the judge ruled that the State could question Goodwin only about the discovery process and the source of the bill of sale and certificate of title.

¶21.    The direct and cross–examination of Goodwin consumed barely more than eight pages of transcript. During the State's direct examination, Goodwin testified that he previously represented Hayden. He testified about the discovery process in criminal cases, stating that he had made a request for documents in discovery, and that he was obligated, under the rules, to provide documents to the State. Goodwin further stated that, prior to the morning of trial, he had not provided the State with any reciprocal discovery. On the morning of trial, he said, he produced to the State the bill of sale and certificate of title, and he had received the documents from Hayden. In light of this testimony, the two documents were admitted into evidence. Finally, Goodwin testified that the first trial ended in a mistrial.

¶22. Hayden's counsel began a cross-examination of Goodwin by asking whether he and Hayden discussed the two documents. When Goodwin refused to answer without a waiver of the attorney-client privilege, the judge sent the jury out and engaged in a lengthy and detailed discussion with counsel and Hayden about the events which led up to Goodwin's testimony. He informed Hayden's counsel that, if questions were asked concerning conversations between Goodwin and Hayden, the attorney-client privilege would be waived. The judge carefully informed Hayden of his rights with respect to the attorney-client privilege. Thereafter, Hayden's counsel informed the court that she had no more questions for Goodwin.

¶23. In addition to Goodwin, who was the seventh witness to testify, the State called Jerome Miller, Yvette Worthington, Lisa Duvall, Pamela Lang, Vincent Hughes, Andrew Cotton, and Randy Ginn. Hayden was the only witness to testify in the defendant's case-in-chief, after which the State called Trooper Ginn as a rebuttal witness.

¶24. The jury returned a verdict of guilty. Hayden filed a motion for a new trial, which was denied. At the conclusion of the subsequent sentencing hearing, the judge found Hayden was a habitual offender and sentenced him to serve a term of ten years' imprisonment, without parole, in the custody of the Mississippi Department of Corrections, and to pay a fine of $10,000. Hayden timely perfected his appeal to this Court.[10]

---

[10]After the appeal was perfected, Justice Randolph entered a single-justice order on behalf of the Court, granting Hayden's motion for appointment of special counsel. This order provided, inter alia, that Dennie B. Mayhone and Kara Lynn Lincoln, law students at the University of Mississippi School of Law participating in the Criminal Appeals Clinic, were specially appointed as counsel; and, that Phillip W. Broadhead, Clinical Professor and Director of the Criminal Appeals Clinic was appointed as an attorney of record. Hayden's trial counsel, Michael R. Farrow, is also an attorney of record for Hayden in this appeal.

¶25. Hayden presents two issues for our review: (1) "Whether the trial court erred in denying the appellant the protection of the attorney-client privilege when, after it removed the appellant's retained counsel, it required said counsel to testify against his former client as a witness for the prosecution that the appellant gave him documents introduced by the State;" and (2) "Whether the appellant was denied his fundamental right to counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution when the trial court removed the appellant's retained counsel."

## ANALYSIS

¶26. Hayden's first assignment of error requires that we analyze the trial judge's conduct and Goodwin's testimony for any evidence or indication of a breach of the attorney-client privilege which existed between Goodwin and Hayden.

### I. Attorney-Client Privilege

*The documents were admissible into evidence.*

¶27. We begin by pointing out that the issue before us is not whether the two documents provided by Hayden to Goodwin were properly admitted into evidence at trial. The documents were admissible because they were both relevant and authenticated. Our rules of evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. A reasonable juror could certainly conclude that, because Hayden produced the fraudulent documents in discovery, he knew the vehicle was stolen. Thus, the documents clearly were relevant.

10

¶28.    The documents were also authenticated.  Our rules of evidence state that "[t]he requirements of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Miss. R. Evid. 901.  Thus, to authenticate the documents, the State had only to show that the documents were what the State claimed them to be, that is, that they were a purported certificate of title and bill of sale which had been produced by Hayden in discovery.  Hayden offered no objection to the authenticity of the documents, nor could he have, since he produced them. That the documents were admissible, however, does not address the question of whether the attorney-client privilege was breached when Goodwin testified that he received the documents from Hayden.

*Did Goodwin's testimony violate the attorney-client privilege?*

¶29.    Hayden's counsel, Goodwin, produced the documents to the State; however, this fact, in and of itself, does not prove that Hayden actually knew about them.  Goodwin could have gotten the papers anywhere.  For the documents to be relevant, the State needed to tie them to Hayden, personally.  In other words, *only if* Hayden  was the source of the documents would they tend to prove one of the elements of the crime – that Hayden knew, or reasonably should have known, the Denali was stolen. This analysis in turn leads us to the question of whether Goodwin's testimony identifying Hayden as the source of the documents violated the attorney-client privilege.

¶30.    Hayden correctly points out that "a confidential communication may be made by acts as well as by words."  McCormick, *Evidence* § 89, 183 (1972).  Thus, as a general rule, an

11

attorney's testimony that he or she received items from the client would violate the attorney-client privilege. However, as with most rules, there are exceptions.

¶31.    In ***Jackson Medical Clinic for Women, P.A. v. Moore***, 836 So. 2d 767 (Miss. 2003), this Court stated that "the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client." ***Id***. at 771 (internal citation omitted). However, this Court went on to point out that, "while only the client may invoke the privilege, the client may also waive the privilege in certain circumstances. Once the client has effectively waived the privilege, the attorney is competent as a witness regarding matters otherwise within the scope of the privilege." ***Id***.

¶32.    The necessity for a waiver of the privilege, however, presupposes that the particular communication to the attorney was privileged to begin with. Many communications from clients to their lawyers are not privileged because they do not meet the confidentiality test of Mississippi Rules of Evidence 502, which states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . .

Miss. R. Evid. 502(b). "A communication is '*confidential*' if not intended to be disclosed to third persons . . . ." Miss. R. Evid. 502(a)(5). For instance, statements made by a client in the presence of others, with no expectation of confidentiality or privacy, generally are not

12

privileged. ***Rogers v. State***, 928 So. 2d 831, 838 (Miss. 2006). Nor are statements made by a client to the attorney, which the client intends to be relayed to third persons.[11]

¶33. It is equally true that a client may at first have no expectation of confidentiality or privilege with respect to a particular communication, but later because of the circumstances, wishes the communication to be considered confidential. And where a client clearly communicates this change of mind to the attorney – assuming the information has not already been disseminated, and thus the privilege waived – the attorney must respect the client's wishes and thereafter treat the communication as confidential. This brings us to the facts of this case.

¶34. The State argues that "once [the] defendant presented the documents to his counsel for the purpose of being used at trial in his defense he waived [the] privilege with regard to those specific documents." This argument assumes that the subject of Goodwin's testimony was privileged – an assumption with which we do not agree.

¶35. Instead, we find that, when Hayden provided the documents to Goodwin, he expressed no intention or expectation that his act, or the documents themselves, would be considered by Goodwin – or anyone else – to be confidential or privileged. And even though subsequent circumstances may have caused Hayden to change his mind, it was too late because, in three separate places in the record, we find clear evidence that the trial judge already had been provided the documents and had been informed that Hayden was the source.

---

[11]For example, a client who tells her lawyer that she is sick and cannot be in court, certainly has no claim that the communication is privileged.

13

¶36.   On the morning Hayden produced the documents to Goodwin, the trial judge noticed the discrepancy in the VINs on the two documents.  In discussing the issue with the attorneys, the judge stated: "Mr. Goodwin had three documents *that his client had given him*, I believe, from recollection this morning."

¶37.   Later that same morning, following a brief recess, the judge again conferred with the attorneys concerning the documents.  During that discussion, the judge stated: "Mr. Goodwin is not at fault for this situation, Mr. Hayden is.  *He has turned these documents over*, and as I've said, Mr. Goodwin was duty-bound by law to do just as he's done."

¶38.   Months later, during a break in Goodwin's testimony at trial while the jury was out, the trial judge stated:

> On the morning of August 17th, 2005, we were preparing to try this case, this very case, and during the process of voir dire there was an indication that Mr. Goodwin had received some documents *from his client* that he might offer at trial, and I - - I believe I remember that was his exact words.

¶39.   The trial judge made all three of these statements in the presence of Goodwin, Hayden, and the State.  No one objected concerning the judge's statements, and no one indicated that his recollection was inaccurate.  Thus, the record clearly indicates that – prior to making any ruling concerning Goodwin – the trial judge already had been informed that Hayden was the source of the two documents.  And it is equally clear that the only two persons who could have communicated this information were Hayden and Goodwin.  This is compelling evidence that, when Hayden provided the documents to Goodwin, there was no expectation of confidentiality or privilege concerning the documents or the fact that

14

Hayden provided them. To the contrary, it is compelling evidence that Hayden intended the information to be communicated to the court and used in his defense.

¶40. A lawyer's representation to the court is binding on the client. ***Rogers v. Rogers***, 662 So. 2d 1111, 1115 (Miss. 1995) (a lawyer's statement concerning the amount of child support owed by his client considered an admission under the Mississippi Rules of Evidence and was binding on his client); ***Grand Court of Colanthe v. Downs***, 98 Miss. 740, 743, 53 So. 417, 418 (1910) (stating a client is bound "by every act which the attorney does in the regular course of practice . . . .").

*Did Goodwin reveal confidential information?*

¶41. In addressing Hayden's confidentiality argument, we look to Rule 502(d)(1), which clearly and specifically states that there is no privilege where "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."

¶42. The fraudulent documents as supplied by Hayden were to be presented to the State, the Court, and the jurors in Hayden's defense. Because Hayden supplied the documents, he clearly meets the "reasonably-should-have-known" test of Rule 502(d)(1). Thus, no privilege existed with respect to the documents, their source, or their content.

¶43. In accordance with Uniform Circuit and County Court Rule 9.04(c)(2),

> [T]he defendant shall, subject to constitutional limitations, *promptly* disclose to the prosecutor and permit the prosecutor to inspect, copy, test and photograph the following information and material which corresponds to that which the defendant sought and which is in the possession, custody, or control of the defendant . . . (2) Any physical evidence and photographs which the defendant may offer in evidence . . . .

15

(Emphasis added)

¶44. Hayden exercised his right to seek discovery regarding his case, which generated a reciprocal duty to disclose to the State all documents which he might have offered into evidence at trial. Thus, under such circumstances, documents furnished to an attorney by a client have no confidential status, a prerequisite to a claim of a privilege.

¶45. If, as the State might reasonably have argued, Hayden had actual knowledge he was offering false evidence, the case before us is nothing more than an attempt by an accused to use manufactured evidence to avoid incarceration. In offering false evidence, Hayden further attempted to embroil his attorney in his nefarious scheme. Our rules of evidence, including those related to the attorney-client privilege, were promulgated in order to "secure fairness in the administration. . . , and promotion of growth and development of the law of evidence to the end that the *truth* may be ascertained and the proceedings justly determined." Miss. R..Evid. 102 (emphasis added).

¶46. It appears that the certificate of title and/or the bill of sale which Hayden furnished to his attorney were counterfeit. If this is the case, Hayden's actions were not only a fraud upon the court, but also a crime under Mississippi Code Annotated Section 97-9-125(Rev. 2006).[12] Hayden's attorney unwittingly was involved in this fraud/crime, therefore destroying any privilege or confidentiality which arguably might have existed. Thus, neither

---

[12]The pertinent sections of Mississippi Code Annotated Section 97-9-125 state: "(1) A person commits the crime of tampering with physical evidence if, believing that an official proceeding is pending or may be instituted, and acting without legal right or authority, he: . . . (b) Knowingly makes, presents or offers any false physical evidence with intent that it be introduced in the pending or prospective official proceeding. . . . (2) Tampering with physical evidence is a Class 2 felony."

the documents themselves nor the fact that they were supplied to Goodwin by Hayden, bear a "confidential" label.

*Was it improper for Goodwin to testify?*

¶47.   The issue of whether it is improper for a client's former attorney to testify was not directly raised in this appeal.  However, because the issue indirectly influences our decision today, we briefly address it.

¶48.   Under the facts of this case, we find no impropriety associated with the trial court's requirement that Goodwin testify.  With certain limited exceptions, "no person has a privilege to refuse to be a witness."  Miss. R. Evid. 501(1).  Specifically, the rule states: "Except as otherwise provided by the United States Constitution, the State Constitution, by these rules, or by other rules applicable in the courts of this state to which these rules apply, no person has a privilege to: (1) Refuse to be a witness. . . ."  After diligent search, we are unable to find any constitutional provision or judicial rule which prohibited Goodwin's testimony.

¶49.   For the reasons stated, we find no merit to Hayden's argument that Goodwin's testimony violated the attorney-client privilege.

**II.**

¶50.   Hayden next argues that, by dismissing his attorney, the trial judge violated Hayden's right to counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution.  Our standard of review on such constitutional issues is de novo.  ***Baker v. State***, 802 So. 2d 77, 80 (Miss. 2001).

17

¶51. As to this question, Hayden provides us with the appropriate authority, for he tells us in his brief:

> From the time of independence from the crown of England, our forefathers and new states legislated and constitutionalized the right to counsel. From these early beginnings, the right has been understood to prevent the government from unjustifiably denying an accused the representation of counsel of his choice. In the rare instances where a trial court has deprived an accused of this right, the proper remedy has been a reversal of conviction and a new trial. "In sum, the right at stake here is the right to counsel of choice. . . the violation is complete." *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2562 (2006). The violation in this case is a "structural defect" requiring a new trial. *Id*.
>
> Both the United States Constitution and the Mississippi Constitution guarantee a person accused of a crime due process of law. To accomplish that end, the Sixth Amendment and Article 3 guarantee every criminal defendant the right "to Counsel." **U.S. Const. amend. VI, XIV; Miss. Const., Art. 3, Section 26.** An important component of this right to counsel is the presumption that citizens may retain counsel of their choice to represent them at trial, especially in a criminal prosecution. *See **Wheat v. United States***, 486 U.S. 153, 159 (1988). It is understood that a defendant should be allowed "a fair opportunity to secure counsel of his own choice." ***Powell v. Alabama***, 287 U.S. 45, 53 (1932). While there are exceptions to retained counsel of choice, such as conflicts arising from representation of multiple defendants, courts are aware that "the government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particular able counsel at his side." ***Wheat***, 486 U.S. at 163. It is a fundamental principle of our system of justice that the courts are charged with protecting the rights guaranteed by our Constitution. ***Rose v. Lundy***, 455 U.S. 509, 518 (1982) (citing ***Ex parte Royall***, 177 U.S. 241, 251 (1986)).

¶52. In essence, after documenting his constitutional right to counsel of his choice, Hayden then recognizes that his right is not unlimited. Although there are numerous exceptions, the one Hayden highlights is a conflict of interest. The trial judge pointed out the conflict of interest created by Hayden's production of the incriminating documents. The general rule is that an attorney may not proceed with the representation of a client with whom the attorney has a conflict of interest. ***Littlejohn v. State***, 593 So. 2d 20, 23 (Miss. 1992). The existence

18

of the conflict was sufficient for, and in fact required, Goodwin's removal as counsel. We find no evidence or indication that the conflict was "manufactured" in order to deprive Hayden of Goodwin's services.

¶53. An exception to the general rule stated above is where the client waives the conflict of interest. In this case, Hayden might very well have proceeded with Goodwin as his attorney, had he waived the conflict of interest. Additionally, he simply could have stipulated to the single fact which required Goodwin's testimony, that is, that the documents were provided by Hayden. Such stipulation would have made Goodwin's testimony unnecessary.

¶54. Finally, we carefully have reviewed the record regarding Hayden's representation following Goodwin's removal. We find no indication that Hayden suffered prejudice by proceeding with his new counsel.

¶55. For the reasons stated, Hayden's argument on this point is without merit.

**CONCLUSION**

¶56. For the reasons stated, we find Hayden's two assignments of error to be without merit. Specifically, we find no breach of the attorney-client privilege, and we find that Hayden was not deprived of any constitutional right. Thus, we affirm the judgment of the Circuit Court of Lowndes County.

¶57. **CONVICTION OF POSSESSION OF STOLEN PROPERTY OVER $500.00 AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER AND PAY A FINE IN THE AMOUNT OF $10,000.00, AFFIRMED. SENTENCE SHALL NOT BE REDUCED NOR SUSPENDED NOR WILL APPELLANT BE ELIGIBLE FOR PAROLE, PROBATION, EARLY RELEASE, GOOD TIME CREDIT, OR ANY WEEKEND OR OTHER TYPE PASS.**

**SMITH, C.J., EASLEY, RANDOLPH AND LAMAR, JJ., CONCUR. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY SMITH, C.J., DICKINSON AND LAMAR, JJ. CARLSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND DIAZ, P.JJ., AND IN PART BY GRAVES, J. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J., AND IN PART BY WALLER, P.J. AND CARLSON, J.**

**RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶58. I fully concur with Justice Dickinson's well-reasoned and disciplined analysis of the Mississippi Rules of Evidence, the Uniform Rules of Circuit and County Court Practice and the Mississippi Rules of Discipline and Professional Conduct. Although I have the utmost respect for my colleague, Justice Carlson, prudence requires I address the dicta from *Flowers* and *Turner* which was relied upon in his dissent. *See Flowers v. State,* 601 So.2d 828 (Miss. 1992); *Turner v. State,* 721 So.2d 642 (Miss. 1998).

¶59. Whether one labels it obiter dictum or judicial dictum is the only issue for debate. Regardless of that rhetorical question, no serious argument can be advanced that the borrowed language from the aforementioned cases was supported by prior decisions of this Court, learned treatises, opinions adopted from sister states, the Mississippi Rules of Evidence, the Mississippi Rules of Professional Conduct and the Mississippi Rules of Discipline, or any other authoritative source. Both *Flowers* and *Turner* fail to address Mississippi Rule of Evidence 501(1) that "no person has a privilege to refuse to be a witness," with limited exception. In neither the case sub judice, nor in *Flowers* or *Turner,* were limited exceptions present.

20

¶60.    Justice Carlson's dissent suggests that it is "harmful and prejudicial" for an attorney to testify against his former client, relying on *Flowers. Flowers* utilized an incomplete professional conduct analysis, *after* finding *admissibility* under the controlling Rules of Evidence, and then conversely opined exclusion would be proper, *but* only when applying an alternative factual scenario. *Flowers,* 601 So.2d at 831. Finally *Flowers* concludes its convoluted analysis by finding the testimony was unnecessary and cumulative, but nonetheless harmless. *Id.* at 832. On the other hand, true to the majority opinion, *Flowers* illustrated exceptions by citing a Comment to Mississippi Rule of Professional Conduct 1.6, which states, "such information may be revealed by the lawyer, i.e., to prevent a criminal act. . . ." *Id.* at 832, or when the information has become generally known. Hayden was clearly attempting to use his attorney in furtherance of a criminal act, when Hayden caused information to be generally known, thus meeting both exceptions, although I submit the admissibility of evidence is controlled exclusively by the Mississippi Rules of Evidence.

¶61.    The dicta in *Turner v. State,* 721 So.2d 642, 649-59 (Miss. 1998), proposes that "prosecutors should refrain from using a prior attorney as a witness against the defendant, regardless of the circumstances." However, painting with such a broad brush without citation to a single case, statute or rule as authority, and imposing a "one-size-fits-all" rule on our bench and bar is unwise. This prohibitory language is in direct contravention of our Rules of Evidence, not to mention violative of the Rules of Professional Conduct. *See* M.R.E. 501(1). *See also* M.R.P.C. 1.6. The Mississippi Rules of Professional Conduct may complement the Mississippi Rules of Evidence when a client seeks to ensnare his attorney in a crime of fraud, but unquestionably the Mississippi Rules of Evidence control the

21

admissibility of evidence.[13] The *Turner* court found the defendant's claim procedurally barred and without merit, and correctly found there was no breach of attorney/client privilege. *Turner,* 721 So.2d at 649.

¶62.   We should be ever cautious and prudent in announcing generalized rules of conduct before issuing condemnations and proclamations which contravene our Rules of Evidence. To do otherwise exposes our finite ability to foresee the future, and places constraints on that which was not perceived or foreseen, creating unintended results, and defeating the overall purpose of justice, *i.e.,* the ascertainment of the truth. *See* M.R.E. 102.

**SMITH. C.J., DICKINSON AND LAMAR, JJ., JOIN THIS OPINION.**

**CARLSON, JUSTICE, DISSENTING:**

¶63.   Because I find reversible error in the State's calling Hayden's former counsel, Gary Goodwin, as a witness in the States's case-in-chief to testify against his former client, Hayden, I respectfully dissent. The majority opinion, authored by Justice Dickinson and joined by some of my learned colleagues, very ably sets out the relevant facts and I thus deem it unnecessary to give a detailed recitation of the facts, other than for the purpose of hopefully making my point.

¶64.   As noted by the majority, Hayden's case was first called up for trial in the Circuit Court of Lowndes County, Judge James T. Kitchen, Jr., presiding.  Hayden was represented

---

[13]"The fact that in exceptional situations the lawyer under the Rules has a limited discretion to disclose a client confidence does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be judicially compelled only in accordance with recognized exceptions to the attorney-client and work product privileges." M.R.P.C. Preamble.

by his retained counsel of choice, Gary Street Goodwin of Columbus. On the day of trial, Alphonso Hayden presented to Goodwin documents which purported to be a bill of sale and a certificate of title to the white 2003 GMC Yukon Denali vehicle. Consistent with the rules of discovery as codified in URCCC 9.04, Goodwin promptly tendered these documents to the prosecution. After reviewing the documents, the prosecutor noticed that the VIN on the bill of sale did not correspond with the VIN on the certificate of title. The VIN on the bill of sale was 1GKEK63U73J140390; however, the VIN on the certificate of title was 1GKEK63UX3J238295.

¶65. On the same day the State received the documents, the State issued a subpoena for Goodwin. When later confronted with this factual scenario, the trial court stated "[t]he dilemma now the Court has is Mr. Goodwin very well may be a witness in this case, although the rules do not allow for such, and the case law does not." Although I will later discuss in more detail the events regarding the trial court's discharge of Goodwin as Hayden's attorney since Goodwin was now a subpoenaed witness in the case, suffice it to state here that, as pointed out by the majority, the trial judge determined that there was a conflict with Goodwin continuing as Hayden's attorney. Therefore, the trial court discharged Goodwin and informed Hayden he would have to retain another attorney. In the end, the trial court entered an order granting a mistrial and resetting the case for trial at the next term of court. By September 28, 2005, Hayden had not retained counsel, and the trial court therefore appointed Michael Farrow as Hayden's counsel.

¶66. During the second trial, the assistant district attorney, Charlie Hedgepeth, called Hayden's previously-retained counsel, Gary Goodwin, to testify. Over the objection of

23

Hayden's new trial counsel, the trial judge permitted Goodwin to testify that he previously had represented Hayden on these charges and that he had received these documents from Hayden on the day of trial. The prosecutor proceeded to question Goodwin about the discovery process and whether Hayden had delivered any discoverable matters to him. In particular, the prosecutor questioned Goodwin about the bill of sale and certificate of title. Goodwin testified that Hayden had handed him those two documents immediately before the commencement of trial, while they were in a witness room, and that during a recess of the voir dire examination, he (Goodwin) had delivered these two documents to the prosecutor to comply with the discovery rules. Goodwin further testified that, because of the late presentation of the two documents to the prosecutor, the trial judge declared a mistrial and continued the trial of the case until the next term of court in Lowndes County. I will address additional testimony from Goodwin, *infra*.

¶67. As Hayden's counsel correctly opined in his appellate brief, "[t]his case is very fact-intensive." With this in mind I now return to the first trial, when, on the day of trial, Hayden presented the bill of sale and certificate of title to Goodwin, who in turn produced these two documents to the prosecutor in compliance with URCCC 9.04, our discovery rule applicable to criminal cases. The attorneys quickly found themselves in chambers with the trial judge concerning this last-minute production of documents by Hayden. After the usual prosecutor/defense lawyer dispute as to whether discovery had been properly conducted by the parties, and who had or had not complied with discovery, the following exchange occurred with Judge Kitchens, Mr. Hedgepeth, the prosecutor, and Mr. Goodwin, Hayden's retained attorney, concerning the bill of sale and certificate of title:

24

BY THE COURT:  How do you propose to get these into evidence?

BY MR. GOODWIN: *I don't know that I'm going to offer them into evidence at this point, Your Honor.  I think the only way they come into evidence is through my client.*

BY THE COURT:  I was – I was –

BY MR. GOODWIN:  And I don't know that –  I mean I'm sure at some point we're going to have a Peterson Hearing.

BY THE COURT:  Sure.

BY MR. GOODWIN: *And – and I don't know whether he'll testify or not. And I don't know what my advice to him will be at that point.*
. . . .

BY THE COURT:  Because see what this purports to show is that Alphonso Hayden bought a vehicle from Curtis Powell.  It is a Yukon Denali 2003, and it gives the VIN Number 1GKEK63U73J140390, and the next document I see is – and I'm assuming this is the alleged Yukon Denali that Mr. Hayden was alleged to be driving in the Defense Exhibit 1 or 2, when he was arrested, and Serial Number 1GKEK63UX3J238295, which appears to be a different VIN number, and therefore you –

BY MR. HEDGEPETH:  I may want to use that then, Your Honor.

BY THE COURT: *It's two different VIN numbers*.  Mr. Goodwin, do you need to confer with your client?  And this is the one that Marvin Harris, the road and bridge tax, so it is a different VIN number after a point.  1GKEK6 is the same.  Then it changes after that – no, after – 1GKEK63, and then after that it changes. *The VIN number is a different VIN number.  Different numbers*.

BY MR. GOODWIN: *I see that*.[14]

(Emphasis added).  After a brief recess, the following exchange occurred:

---

[14]From the record, it is obvious that this is the first time that Goodwin realized that the VINs on the bill of sale and certificate of title which Hayden had given him that day did not match up. Stated differently, the totality of the record reveals that at the time Goodwin presented these documents to the prosecutor in an effort to comply with the discovery rules, Goodwin did not realize that there was a discrepancy in the VINs on these two documents.

BY THE COURT: Court reporter, we are back on the record in the matter of State of Mississippi v Alphonso Hayden. This is Cause Number 2004-0645-CR1. We have had a number of motions and a number of issues that we have talked about today, and probably one of the more innocuous matters I thought was going to be a discovery issue.

Mr. Goodwin had three documents that his client had given him, I believe, from recollection this morning. Mr. Goodwin has requested reciprocal discovery in this matter, and under his obligations under the Rules of Professional Conduct and – and other rules, when he gets a matter in discovery or that is turned over to him, he has a reciprocal duty to turn that over to the State of Mississippi.

Mr. Goodwin did that, as required by the law and by the rules.

The State had the – had some concerns about the document, because it had been supplied to them this morning.

We went ahead and ruled on the other motions, a motion to dismiss for failure to provide a speedy trial and motion in limine to keep certain evidence from the jury that was probably prejudicial and not relevant, given the few facts that I had before this Court.

So we had ruled on those, and as we go to rule on the motion for late disclosure on the evidence, the Court is going through the evidence and asking the attorneys questions about it. And it's important at this point for the Court to remind the record that this defendant is charged with possession of stolen property; that being a 2003 Yukon Denali that has a serial number on it.

All right. Part of the proof in receiving stolen property or being in possession of stolen property is that you knew or should have known that the property was stolen.

As we were going through the evidence, and I believe it was a bill of sale, a certificate of title, and a bridge and road – basically a tag receipt, showing that you had paid your taxes on the vehicle, there are two different VIN Numbers on this vehicle.

One is – one set of numbers is on the State of Mississippi Road & Bridge Privilege Tax and registration receipt, and the certificate of title, and there is yet a totally different VIN number on the bill of sale that has Mr. Alphonso Hayden's signature on it.

26

This bit of evidence very well may be used by the State in its case to show that Mr. Hayden knew or should have known that the vehicle in question was stolen, because what it shows is a VIN number that has nine different either letters or numbers than the one – than the ones that are on the – the registration receipt and the certificate of title.

*The problem, as the Court sees it, is that the fact that Mr. Goodwin did what by law he's required to do, and turned this document over to the state, or documents, has now potentially made him a witness in this case.* As I am given to understand, the State is either going to make a motion to have Mr. Goodwin served as a witness or – has the subpoena been issued?

BY MR. HEDGEPETH: May I, Your Honor?

BY THE COURT: You may.

BY MR. HEDGEPETH: Your Honor, for the record, after having a chance to review the documents and talking with the officers, the – with the VIN numbers being so different, and one of them being the true VIN number of the stolen vehicle and the second VIN number is actually the correct number on the VIN plate in the vehicle when it was seized from the defendant, which shows to be off of a vehicle from Silverthorne, Colorado, which is a total false VIN for that vehicle that he – he had, we believe that that shows very culpatory (sic) evidence toward whether or not he knew or should have known the vehicle was stolen.

And we were – I talked with the officers about introducing those documents, and we made the decision that we would try to introduce those.

Then I thought about how I would do that. The officer's couldn't testify to it. The only person that I could call as a witness is the person that gave me the documents, and that is Mr. Goodwin.

So therefore I have requested a subpoena be issued for Mr. Goodwin. The bailiff in the courtroom, Ms. Lovick, has it, and I would ask her to serve Mr. Goodwin with that at this time.

BY THE COURT: All right. For the record, court reporter, Mr. Goodwin has been served a copy of a subpoena in this matter. These three documents were provided to the State by Mr. Goodwin, as required by law, by the Rules of Professional Conduct.

It was not work product, because it was supplied, and Mr. Goodwin had requested reciprocal discovery, and Mr. Goodwin has done everything that the law requires him to do. He has been above board, and he has turned that information over to the State.

The dilemma now the Court has is Mr. Goodwin very well may be a witness in this case, although the rules do not allow for such, and the case law does not. There's an old case from – in the early 200s of the Southern Reporters, I can't remember the exact page now, but I can find it, or the case.

It involved a couple of co-defendants in a – in a drug case, and – and as I recall, the defendants were two ladies. I will get the case in a minute. It will come to mind.

But in that case, the defense lawyer continued on in the representation, person was convicted, and the Supreme Court chastised the lawyer and said, basically, thou shall not do that.

So I have an analogous situation here, not of Mr. Goodwin's making, but of Mr. Hayden's making. Mr. Goodwin is not at fault for this situation, Mr. Hayden is. He has turned these documents over, and as I've said, Mr. Goodwin was duty bound by law to do just as he's done.

Therefore, I would be in the position of putting Mr. Hayden's attorney in a hopeless conflict, I think, because either Mr. Goodwin would have to be called to the stand, which would result in an immediate mistrial, or Mr. Goodwin would have to stipulate that these documents were given to him by Mr. Hayden.

Then, in the same case, Mr. Goodwin would have to try to advise Mr. Hayden whether it would be in his best interest to take the stand or not take the stand. *Prior to those documents, it may have very well have been in Mr. Hayden's best interest not to take the stand.*[15]

But if these documents are stipulated to, and that they came from Mr. Hayden, then I don't see how Mr. Goodwin can very well make that – that advisement of whether to take the stand or not.

---

[15]As it turned out, in the second trial, Hayden did take the stand and testify, although the trial judge opined at the time of the mistrial in the first trial that before these two disputed documents were presented, "it may have very well have been in Mr. Hayden's best interest not to take the stand."

28

As I've said, Mr. Goodwin has done everything that the law requires of him. This is not of Mr. Goodwin's making.

This is one of those rare cases when the Court believes that manifest necessity requires that I mistry this case.

Also, Mr. Hayden, I think that I'm going to have to inform you that you are going to have to hire another lawyer. Because Mr. Goodwin, unless you stipulate at some future trial that these documents came from you, Mr. Goodwin is still going to be in that same position of being called as a witness. You have now made your lawyer a witness in this case, or in this case and in the future. Mr. Goodwin cannot continue his representation.

The Court is of the opinion that any funds that Mr. Goodwin has received in defense of you in this case has been earned, and you are not entitled to get the money back from him, because this is of your making, not of his.

He got ready to try the case and has argued these motions this morning effectively to limit some of the evidence that was going to come in against you.

Accordingly, I believe that I have no choice but to, one, declare a mistrial in this case, and two, remove Mr. Goodwin in this case because he is a potential witness in this case.

Do you understand what I'm saying, Mr. Hayden?

BY THE DEFENDANT: Yes, sir.
. . . .

*Mr. Goodwin ably argued that motion before he – quite frankly, before he or the State realized the apparent conflict. The apparent conflict only became evident, Mr. Hayden, when the Court was reading the information that you had supplied in open court on the record, and the Court read the different VIN numbers and it showed two different VIN numbers apparently on the same vehicle that made this become an issue of whether you knew or should have known that this vehicle was stolen.*

So therefore, the Court is of the opinion that this case should be mistried and that Mr. Goodwin will, by law, be removed from this case, because he is a potential witness, and he has been served as such.

Do you understand what I'm saying, Mr. Hayden?

29

BY THE DEFENDANT:  Yes, sir.

BY THE COURT:  Mr. Goodwin?

BY MR. GOODWIN:  Might I just inquire of the Court, I don't know what my defendant's financial position is, but as I understand what the Court is saying, that I am – I am – I am hereby discharged, but that – and – this is what I want to be able to advises my client is, if he had another attorney, and knowing – and counseled with that attorney and entered into a document that waived my conflict, would I still be allowed to proceed, assuming I could reach a stipulation with the District Attorney regarding the admissibility of that document without me taking the stand?

BY THE COURT:  I don't believe that you could at this point –

BY MR. GOODWIN:  Okay.

BY THE COURT:  – Mr. Goodwin.  I believe that you are –

BY MR. GOODWIN:  Hopelessly and forever conflicted.

BY THE COURT:  Absolutely.  I think you have – I think you have done the – the right thing to do, you've done what the law requires, and I think because of that the – the Court does not believe that you can proceed under any circumstances.

(Emphasis added).

¶68.   In considering this issue, I am mindful of the fact that I am reviewing a trial judge's decision concerning the admissibility of evidence. This Court consistently has held that the standard of review regarding the relevancy and admissibility of evidence is abuse of discretion. *Robinson v. State*, 940 So. 2d 235, 238 (Miss. 2006); *Palmer v. State*, 939 So. 2d 792, 794-95 (Miss. 2006); *Flowers v. State*, 601 So. 2d 828, 831(Miss. 1992).  Thus, "a trial judge enjoys a great deal of discretion[,]" and unless the trial judge "abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Robinson*, 940 So. 2d at 238; *see also Flowers*, 601 So. 2d at 831.  Additionally, "[t]he

30

discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." *Flowers*, 601 So. 2d at 831.

¶69. I see no reason to discuss this case in the context of Rules 1.6 and 3.7 of the Mississippi Rules of Professional Conduct and related cases, concerning the attorney-client privilege as it relates to confidentiality and lawyers being called as witnesses. Nor is this a case in which I deem it necessary to address Mississippi Rule of Evidence 502 pertaining to the lawyer-client privilege. Likewise, I am not inclined to address this issue, as suggested by Hayden's counsel, from the standpoint of considering how foreign jurisdictions have dealt with the "source" of disputed documents or information. Instead, in my opinion, this case turns on our prior criminal cases in which we addressed the issue of a defendant's former lawyer testifying for the prosecution.

¶70. In *Flowers v. State,* 601 So. 2d 828 (Miss. 1992), the defendant made incriminating statements to a polygraph examiner with his lawyer present. The polygraph examiner had advised Flowers of his *Miranda* rights prior to administering the polygraph examination. *See Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed. 2d 694 (1966). By the time of trial, Flowers had a different lawyer and the State called Flowers's former attorney to testify about Flowers's incriminating statements. This Court affirmed Flowers's conviction applying a harmless-error analysis, since the polygraph examiner had also testified concerning these incriminating statements. But the Court found that the trial court had committed error in allowing Flowers's former attorney to testify about these statements. Additionally, while this Court addressed this issue by analyzing the Mississippi Rules of Professional Conduct and Mississippi Rule of Evidence 502, we also discussed the potential

31

harmful and prejudicial effect of a lawyer in essence testifying against the lawyer's former client:

> A lawyer's job at trial is to act as an advocate for his client. If the lawyer becomes a witness at the trial, it is easy to see how the jury could be confused by this dual role. Should his testimony be taken as proof or just a comment on the proof? Although [the former attorney] was not still representing Flowers at the time of trial, he had previously represented him in this same matter. It follows that the jury may have given his testimony more weight than that of the average lay witness. The fact that [the former attorney] no longer represented Flowers and testified against him may even have been taken to mean that once [the former attorney] learned what Flowers had done he wanted to help convict him rather than represent him. We can only speculate as to what [the former attorney's] testimony meant to the jury.
> . . . .
>
> It was foolish of the prosecution to call [the former attorney] . . . and such testimony would add nothing to the state's case. The trial judge erred in admitting [the former attorney's] testimony. By the offer and admission of this cumulative and questionable testimony, the state nearly succeeded in turning a simple, clean conviction into a reversal and retrial. Gilding can never improve the lily.

*Flowers*, 601 So. 2d at 832-33.

¶71.   This Court went further in *Turner v. State*, 721 So. 2d 642 (Miss. 1998). Turner was indicted for automobile burglary.  Tammy Porter testified on behalf of Turner and offered favorable testimony in Turner's defense.  In the State's rebuttal, the prosecution, obviously in an effort to discredit Porter's testimony, called Turner's former attorney to testify before the jury that Porter was related to Turner's mother.  On appeal, Turner submitted four issues for this Court's consideration, one of which was an assertion that the trial court committed reversible error in allowing Turner's former lawyer to testify for the State at trial; however, we found this issue to be procedurally barred since Turner failed to cite any authority to support this argument.  *Id.* at 649 (citing *McClain v. State*, 625 So. 2d 774, 781 (Miss.

1993)).  Procedural bar notwithstanding, we discussed the merits of Turner's assignment of error. *Id.*  Even though Turner's former attorney was never identified as such, Turner's trial attorney attempted to cross-examine the former attorney about the fact that he had represented Turner at his preliminary hearing; however, the State's objections were sustained by the trial court. Inasmuch as the only efforts to elicit evidence concerning the fact that the lawyer/witness was Turner's former attorney in the same criminal action were made by Turner's trial attorney, this Court found no reversible error and in the end, affirmed Turner's conviction.  However, concerning the practice of the prosecution calling a defendant's former attorney to testify for the State, this Court had a stern admonition for the trial bench and bar:

> Nevertheless, we find [the former attorney's] testimony appears unseemly in this case.  Prosecutors should refrain from using a prior attorney for a defendant as a witness against the defendant, *regardless of the circumstances*, so as to avoid any possible appearance or claim of impropriety.  The prosecutor [not] using a prior attorney of the defendant as a witness against the defendant also helps to curtail any possible public criticism, distrust of the judicial system, and particularly helps to avoid any subsequent criticism or bar complaints against the attorney.  This type of procedure is fraught with danger especially for the attorney so testifying and *should always be avoided*.
>
> As a result, although we condemn the procedure, we hold that this assignment of error is both procedurally barred and *alternatively under the facts here*, without merit.
> . . . .
>
> [T]his procedure *is condemned and is to be avoided*.  Prosecutor's should refrain from using a defendant's prior attorney as a witness in proceedings against the defendant because it appears unseemly, unnecessarily invites problems, causes possible distrust of the judicial system, and creates a possible appearance of impropriety.

*Id.* at 649-50 (emphasis added).  *See also* **Gullett v. State**, 523 So. 2d 296, 300-01 (Miss. 1988) ("trial judge in a perjury trial should be sensitive to the possibilities that presence of

and identification of another judge and the district attorney [testifying] on the side of the prosecution may substantially prejudice the defendant in the eyes of the jury.")

¶72.    Returning to the facts of today's case, contrary to the situation in *Turner*, Goodwin, Hayden's former attorney, was clearly identified before the jury as Hayden's former attorney on the very charges for which Hayden was then on trial. Goodwin testified before the jury that he had represented Goodwin for "[a]bout a year and a half . . . concerning these charges." Regarding how he came into possession of the disputed bill of sale and certificate of title on the morning of trial, Goodwin testified:

> My recollection is that at some point either he (Hayden) hand – he gave those to me when we were in the witness room preparing for trial, and I'm talking about like five minutes before the trial began. I may have put them in the file.
>
> I come out here, we started the voir dire with Judge Kitchens, and at some point during the break in the voir dire, either before or after the voir dire was finished, when I could actually get up and move across the room, I brought you (prosecutor) those documents and showed them to you and advised you that they were discovery, that I might or might not utilize them if there was a case in chief put on by us, and that I would make you copies during the break.

Through Goodwin's testimony, the documents which Hayden had presented to Goodwin on the day of the first trial, namely the purported certificate of title and bill of sale to the white 2003 GMC Denali, were received into evidence as exhibits 5 and 7, respectively.

¶73.    By the time Goodwin testified, deputy tax collector Pamela Lang already had testified. During Lang's testimony the certificate of title was marked as exhibit 5 for identification purposes only, and the prosecutor examined Lang as to the validity of this document. Lang unequivocally testified that this purported certificate of title was false (which no doubt it was). Lang testified that some of the indicators of this being a fraudulent title were that the

34

document had the VIN placed in the top right-hand corner instead of the top left-hand corner, and that the title number was placed in the top left-hand corner instead of the top right-hand corner. Also the purported owner of the 2003 Denali was listed first name – last name, whereas the owner on a valid title will be listed with the last name appearing first and the first name appearing last.

¶74. In his opening statements to the jury, the prosecutor laid out a road map of some of the evidence which he expected to be presented:

> Now, and to top that off, Mr. Hayden had this tag in Lowndes County issued to a guy by the name of Marvin Harris. He had it titled in his name. And the officer will tell you, he's hunted, can't find any Marvin Harris. All right?
>
> Now, that's where it stands until August of 2005. And in August of 2005, this case was set for trial. And as usual, we start the voir dire process. During the jury voir dire process, Mr. Hayden hands to his attorney – this is going to be August – let me just go over here – August of '05, he hands to his attorney, which is going to be Gary Goodwin at that time – who had been his attorney for a while – he hands to him now, that morning, during voir dire, a bill of sale and a certificate of title.
>
> The bill of sale, you're going to find there are things wrong with it, but it supposedly denotes that Mr. Curtis Powell sold Mr. Hayden the vehicle.
>
> All right? And the certificate of title, which you know you get after you put your application in, which he put the application in, and you get a certificate of title later on? Shows July – let's see, what date – I've forgotten the date. Anyway, it would have been not long after this application was made on this tag, where you would get a certificate of title mailed to you out of Jackson.
>
> He gave him a certificate of title showing the tag, the vehicle, is now in Marvin Harris's name, which is what the application he asked Ms. Pam to do, was to title it in Marvin Harris's name. And now we've got a certificate of title.
>
> But Ms. Lang will tell you, that certificate of title didn't come out of Jackson, that it's also bogus.

So not only did he have the application from Herrin-Gear that's wrong, get a bill of sale and certificate of title the morning of his first trial, which caused things to stop to have to be looked into to see if they were legitimate, and what we found is those were bogus.

During his closing arguments, the prosecutor reminded the jury of these "bogus" documents which Hayden had presented to Goodwin at the beginning of the first trial:

Now, by the way, he finally said that's not all he had. That was all he had to start with, but if you remember his testimony, he finally said, well, yeah, I did have the certificate, and yeah, I did have the bill of sale all at the same time. He finally said that, right?

When y'all pick up that bill of sale and look at it, look at the date on the bill of sale. It's June the 4th.

Mr. Miller said he saw him, what, the first of June. Is he telling you the truth? No, he's not.

And the bill of sale has the true VIN number on it, when you look at it. And he's buying it from Curtis Powell to actually him.

Okay? Do you think he knew when he went to get the tag on July the 7th, over a month later, that I can't use this bill of sale and the certificate, which has the false, he's got to use what? It's not coming from am individual anymore, like this was, he uses this.

Because guess what? The certificate of title is in Morris Harris – Marvin Harris's name. That's not who he bought it from. Should he have known it was stolen?

¶75. Thus, contrary to the situations with which this Court was confronted in *Flowers* and *Turner*, I cannot find harmless error in today's case. This situation easily could have been avoided if the State had simply proceeded to trial in August 2005, without documents which were produced by Hayden to Goodwin on the day of trial; because the prosecution obviously was prepared to go to trial prior to learning of the existence of the bill of sale and certificate

36

of title which Hayden had in his possession and tendered to his then-attorney.[16] The prosecution in **Flowers** and **Turner** narrowly escaped a reversal of the defendant's conviction. In fact, in **Turner**, this Court found the issue "under the facts here" to be without merit.[17] **Turner**, 721 So. 2d at 650. However, with this Court having "fired a shot across the bow" in **Turner**, based on the record before us in today's case, I do not believe the State should be as fortunate as it was in **Flowers** and **Turner**. In **Tanner v. State**, 764 So. 2d 385, 399-400 (Miss. 2000), this Court discussed the basic test for harmless error:

> [T]he inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether the error was unimportant in relation to everything else the jury considered on the issue in question.

**Id.** at 399-400 (quoting from **Thomas v. State**, 711 So. 2d 867, 872 (Miss. 1998)). While, absent Goodwin's testimony, substantial evidence was before the jury concerning Hayden's guilt, on the other hand, when I remember this Court's words from **Flowers** as I look at the record in today's case, I am not prepared to say Goodwin's improper testimony was so unimportant, when compared with all the evidence, that it had no effect on the eventual outcome of the trial. **Kolberg v. State**, 829 So. 2d 29, 67 (Miss. 2002). Likewise, I recall the statement of the learned trial judge in today's case when he declared a mistrial in this case that "[p]rior to those documents [Hayden's production of the bill of sale and certificate of

---

[16]The record reveals that on August 9, 2005, eight days prior to this case being called up for trial, the District Attorney was successful in securing an order from the trial judge approving payment of $831.79 to cover the expenses of an out-of-state witness traveling to Mississippi to testify at Hayden's trial. I am confident the District Attorney would not have incurred this expense on behalf of the State if he were not otherwise fully prepared to go to trial and confident of securing a conviction.

[17]Again, for the sake of emphasis, the issue in **Turner** was procedurally barred, but this Court alternatively addressed the issue on its merits. **Turner**, 721 So. 2d at 649-50.

37

title], it may have very well been in Mr. Hayden's best interest not to take the stand." In the second trial, Hayden took the stand and testified.

¶76.    Another problem inherent with the procedure utilized by the trial judge in today's case is that if this procedure continues to be permitted, as evidently espoused by the majority, defense attorneys in criminal cases routinely may find themselves being subpoenaed by the State as witnesses only because the defense attorneys dutifully have complied with the reciprocal discovery provisions of URCCC 9.04. Likewise, as I have discussed, the potential is great for unfair prejudicial effect on the jury when a lawyer testifies for the prosecution and against a former client who is on trial for the very same charges on which the lawyer had represented the defendant.

¶77.    Therefore, it is my fervent opinion that Goodwin should not have been permitted to testify. However, even though I have not focused on the attorney-client privilege, I mention here, in fairness to Goodwin, that the record in today's case reveals that on several occasions, Goodwin, while on the witness stand, successfully invoked the attorney-client privilege on behalf of Hayden.

¶78.    In sum, I find that the trial judge abused his discretion in sua sponte removing Hayden's retained counsel, Gary Goodwin, and then later permitting Goodwin to testify for the State at Hayden's subsequent trial relating to the same charges. As this Court stated in *Turner*, "[p]rosecutors should refrain from using a prior attorney for a defendant as a witness against the defendant, regardless of the circumstances." *Turner*, 721 So. 2d at 649. "This type of procedure is fraught with danger especially for the attorney so testifying and should always be avoided." *Id.* at 650.

38

¶79. I cannot say on the record before us that such error was harmless; therefore, I find this issue to have merit to the extent discussed. One caveat is that my concerns expressed here today relate only to criminal trials. I am in no way attempting to address this issue in the context of the civil setting.

¶80. For the reasons stated, I would reverse the trial court's judgment of conviction and sentence and remand this case to the Circuit Court of Lowndes County for a new trial, absent Gary Goodwin's testimony. Because the majority affirms the conviction and sentence, I respectfully dissent.

**WALLER AND DIAZ, P.JJ., JOIN THIS OPINION. GRAVES, J., JOINS THIS OPINION IN PART.**

**GRAVES, JUSTICE, DISSENTING:**

¶81. While I join Justice Carlson's dissent in part, I write separately to address the application of (1) the attorney-client privilege, (2) the Sixth and Fourteenth Amendments to the United States Constitution, and (3) Article 3 of the Mississippi Constitution. All are relevant to the instant case because of the trial judge's decision to disqualify Hayden's lawyer and compel him to testify during the State's case.

¶82. The attorney-client relationship is governed by Mississippi Rule of Evidence 502, which states: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself . . . and his lawyer." M.R.E. 502(b). A communication that is "not intended to be disclosed to third persons other

than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication" is considered "*confidential*." M.R.E. 502(a). The purpose of the privilege "'is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice. That purpose, of course, requires that clients be free to make full disclosure to their attorneys.'" *Williamson v. Edmonds*, 880 So. 2d 310, 318 (Miss. 2004) (citations omitted). The scope of the attorney-client privilege has been interpreted broadly by this State. This Court in *Williamson* stated, "the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client. . . ." *Williamson*, 880 So. 2d at 319. Moreover, information is privileged if it "would facilitate the rendition of legal services or advice," and is not required to be "purely legal analysis or advice." *Id*.

¶83.    While it is true that disclosure of documents to third parties may lead to waiver of the attorney-client privilege, a disclosure "made in furtherance of the rendition of professional legal service to the client" does not violate the confidential nature of the communication and therefore it does not waive the privilege. M.R.E. 502(a)(5); *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 487 (N.D. Miss. 2006). To hold otherwise would be contrary to public policy because it would discourage open and honest communication between attorneys and their clients, which is encouraged to promote fair administration of justice, as embodied in Mississippi Code Annotated Section 73-3-37 (Supp. 2005), Mississippi Rule of Evidence 502, and Mississippi Rule of Professional Conduct 1.6.

40

It is undisputed that Hayden gave the subject documents to his formerly-retained counsel during the course of the attorney's representation of Hayden. The documents pertained to the crime charged, and were surrendered to the prosecution as part of reciprocal discovery.

¶84.    While Justice Carlson's dissent does not address the issue of whether the *source* of evidence obtained by an attorney from his client should fall within the attorney-client privilege, I will address it here. It is clear where information regarding the source of documents is "received by the attorney in his professional capacity" through communication with his client and where, in fact, that source is the client, that information is protected under Mississippi Rule of Evidence 502. While this Court has never addressed this specific issue, at least three other state supreme courts have been faced with it and have held the information to be privileged. *See* ***Dyas v. State***, 539 S.W. 2d 251, 256 (Ark. 1976); ***People v. Meredith***, 29 Cal. 3d 682, 691-93 (Cal. 1981); ***State v. Olwell***, 394 P.2d 681, 685 (Wash. 1964).

¶85.    The Supreme Court of Washington recognized the attorney-client privilege should be preserved even where the attorney turns over evidence in his possession. ***State v. Olwell***, 394 P.2d 681, 685 (Wash. 1964). By allowing the prosecutor access to such information, the public's interest is served, and by protecting disclosure of the source of the information by the attorney-client privilege, the client's interest is preserved, thereby striking an important balance between these conflicting interests. The attorney-client privilege protects knowledge obtained during representation, including that the client was the source of the documents produced by the defense. Therefore, even when the physical evidence itself is not privileged, the prosecution should be precluded from disclosing that the defendant's attorney was the

41

source of the evidence. Norman Lefstein, *Incriminating Physical Evidence, The Defense Attorney's Dilemma, and the Need for Rules*, 64 N.C.L. Rev. 897, 922 (1986).

¶86. Hence, in the instant case, the production of the documents did not waive the attorney-client privilege as to the substance of any communications between Hayden and his attorney surrounding those documents or the transfer of them. In order for the prosecution to offer the documents turned over to them in reciprocal discovery, the State would have needed to present the information in a manner which avoided revealing the original source of the information. Thus, the trial judge erred in forcing Hayden's former counsel to testify as to the source of the documents.

¶87. Finally, I will address the Sixth Amendment of the United States Constitution and Article 3 of the Mississippi Constitution, both of which are implicated by the facts of this case. One of the primary purposes of defense counsel is to assist and guide the defendant through the criminal justice system. The Sixth Amendment to the United States Constitution and Article 3 of the State Constitution provide that every criminal defendant has the right "to Counsel." U.S. Const. amend. VI, XIV; Miss. Const. art. 3, § 26. With limited exceptions, an element of this right is the right of a citizen, who does not require appointed counsel, to choose who will represent him throughout the legal process. ***United States v. Gonzalez-Lopez***, 548 U.S. ___, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006). *See also* ***Wheat v. United States***, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). "[A] defendant should be afforded a fair opportunity to secure counsel of his own choice." ***Powell v. Alabama***, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932). The United States Supreme Court has stated that the Sixth Amendment "commands . . . a particular guarantee of

42

fairness." *Gonzalez- Lopez*, 126 S. Ct. at 2562. While trial courts are given broad discretion in balancing the needs of fairness and the right of defendants to have counsel of their choice, trial courts are charged with an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez*, 126 S. Ct. at 2566 (quoting *Wheat*, 486 U.S. at 160).

¶88. The trial court failed to make any attempt at balancing the foregoing interests, asking only how counsel intended to introduce the subject documents, and allowing the State to serve Hayden's former counsel with a subpoena to be a witness in the case. In removing Hayden's retained counsel, the trial court denied Hayden his fundamental right to counsel of choice, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. The trial court further exacerbated the unjust denial of Hayden's constitutional rights when it allowed the State to use Hayden's former attorney as a witness to introduce otherwise inadmissible evidence.

¶89. For the foregoing reasons, I respectfully dissent.

**DIAZ P.J., JOINS THIS OPINION. WALLER, P.J., AND CARLSON, J., JOIN THIS OPINION IN PART.**